**Elbert POWELL, Plaintiff,**

v.

**CITY OF MONTGOMERY, et al., Defendants.**

No. Civ.A. 98–T–1091–N.

United States District Court, M.D. Alabama, Northern Division.

July 12, 1999.

K. David Sawyer, Birmingham, AL, for plaintiff.

Norman Gunter Guy, Jr., Brannan & Guy, Montgomery, AL, Robert David Segall, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, for defendants.

### MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Elbert Powell claims in this lawsuit that he was wrongfully terminated from his job with the Montgomery Fire Department in violation of the first and fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983. The defendants are the City of Montgomery, its Mayor, its Fire Chief, and its Deputy Fire Chief. Juris-diction has been properly invoked pursuant to 28 U.S.C.A. §§ 1331, 1343. The case is currently before the court on the defendants' motion for summary judgment, and, for the reasons set forth below, the motion will be granted.

### I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for its motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Fed.R.Civ.P. 56(e).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. BACKGROUND

The Montgomery Fire Department requires its employees to keep their weight

within established guidelines, and it disciplines those employees who are unable to do so. Ordinarily, the department weighs its employees monthly, but its weight-management regulations provide that "the Fire Chief may weigh [employees] as often as[ ] he deems necessary: for example, if he believes [an employee] exceeds the weight standard and/or does not present a professional fire department appearance, a weight check may be required." [1]

An employee found to be above the maximum weight allowed for the employee's height and gender is subject to a three-step disciplinary process determined by the number of times that he or she has been found to be overweight within the preceding 12 months. Step one is a five-day suspension. Step two is a 15–day suspension. Step three is the automatic termination of his or her employment at the Fire Department.

Elbert Powell began work at the Montgomery Fire Department in 1982 and was well-acquainted with the department's weight-management regulations. On August 29, 1990, Powell weighed two pounds more than the maximum weight allowed for a man of his height and was given a five-day suspension. On February 5, 1992, Powell again weighed two pounds more than the maximum and again received a five-day suspension. On November 9, 1993, Powell was overweight by eight pounds and earned his third five-day suspension. On March 8, 1994, Powell earned a 15–day suspension by being overweight for the second time in 12 months. On July 11, 1995, Powell was two pounds overweight and received a five-day suspension. On July 15, 1997, Powell was 13 pounds overweight and received a five-day suspension. On October 6, 1997, Powell was 14 pounds overweight and received a 15–day suspension.

On March 10, 1998, the department conducted its monthly weigh-in for employees in Powell's regular shift. Powell had taken the day off, though, and did not weigh. The next day, while Powell was substituting for a fellow firefighter on another shift, District Chief R.W. Crowe ordered Powell to weigh. Powell refused, citing his belief that it was the department's practice not to weigh an employee who was not on his or her regular shift. Crowe nonetheless insisted that Powell get on the scales, and Powell again refused. Crowe then took Powell to Fire Department headquarters where Deputy Chief R.E. Howard ordered him onto the scales. Powell again refused. Howard then instructed Crowe to put Powell on administrative leave effective immediately.

The next day, Powell was charged with refusing to obey a direct order, and Howard recommended that he be terminated. Mayor Emory Folmar concurred after a disciplinary hearing, and Powell was notified of his termination shortly thereafter. Powell then appealed his termination to the Montgomery City—County Personnel Board. The Board gave Powell a full hearing on May 12, 1998, and upheld his dismissal.

Powell now contends in this lawsuit against the City of Montgomery, its Mayor, its Fire Chief, and its Deputy Fire Chief that the termination of his employment violated his rights under the first and fourteenth amendments to the United States Constitution, as enforced by 42 U.S.C.A. § 1983.

### III. DISCUSSION

#### A. First Amendment

 Powell alleges that the defendants violated the first amendment by firing him after learning that he was to testify in a fellow firefighter's lawsuit against the City of Montgomery. To make out a prima-facie case of first-amendment retal-

---

**1.** Defendants' motion for summary judgment and brief in support thereof, filed April 1, 1999, exh. 3.

iatory discharge, Powell must establish, first, that he engaged in conduct protected by the first amendment and, second, that this conduct was a substantial or motivating factor in the decision to terminate him. *See Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). This he fails to do.

Powell has introduced no evidence to show that his potential testimony against the city was even a small factor in his termination. Prior to his dismissal, he had not given a statement or deposition of any sort in that litigation. He never discussed the litigation with any of the defendants before his termination, and he has no evidence that any of the defendants was aware that his name was on the witness list. Each of the individual defendants denies any such knowledge. Powell can show only that his name was placed on the fellow firefighter's witness list on January 20, 1998, and this evidence is not enough to permit a reasonable jury to conclude that Powell's potential testimony was a substantial or motivating factor in his termination. *Cf., e.g., Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993) (holding, in the context of a retaliation claim under Title VII, that "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action"). Thus, even assuming that his potential testimony is conduct protected by the first amendment, Powell still fails to make out a prima-facie case of retaliation, and the defendants are entitled to judgment as a matter of law on this claim.

### B. Fourteenth Amendment

#### i. Equal Protection

 Powell contends that the defendants violated the equal protection clause of the fourteenth amendment through the unequal application of the Fire Department's weight-management regulations.

In order to prevail on an equal-protection claim based upon the application of a facially neutral statute, it must be established, first, that the plaintiff was treated differently than similarly situated persons. *See Strickland v. Alderman,* 74 F.3d 260, 264 (11th Cir.1996). "Different treatment of dissimilarly situated persons does not violate the Equal Protection Clause." *E & T Realty v. Strickland,* 830 F.2d 1107, 1109 (11th Cir.1987) (citations omitted), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Second, it must be established that the defendant unequally applied the facially neutral statute "for the purpose of discriminating against the plaintiff." *Strickland v. Alderman,* 74 F.3d at 264. "Mere error or mistake in judgment when applying a facially neutral statute does not violate the equal protection clause. There must be intentional discrimination.... Even arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." *E & T Realty v. Strickland,* 830 F.2d at 1114 (citations omitted).

 Powell was not terminated for violating the department's weight-management regulations which he now claims were applied unequally to him. Rather, he was terminated for refusing to obey a direct order. If Powell wished to challenge the unequal application of the weight-management regulations he should have obeyed the order, and, if it had been determined that he weighed more than the maximum allowed, he could then have challenged any adverse personnel action taken as a result of the violation and might have based his challenge on a number of arguable constitutional grounds, including whether the Fire Department could require that he be weighed while not requiring the same for other similarly situated firefighters and whether the department could require that he be weighed while working on another firefighter's shift.[2]

---

**2.** Indeed, because Powell refused to be weighed, it was never determined that, in fact, he was overweight on March 10, 1998.

Because he did not obey the order to weigh, however, the critical question in assessing his equal-protection claim is whether Powell has identified another firefighter who refused to obey a direct under circumstances similar to his and was not terminated.

■ Powell points to three other officers who refused to obey direct orders but were not terminated. However, two of these firefighters, who were suspended, eventually complied with the orders given to them. Moreover, none of these firefighters refused to obey a weight-regulation order, and, more importantly, Powell has not put forward any evidence to show that these three firefighters had work records similar to his that would justify similar treatment. In conclusion, because Powell has failed to show that another firefighter similarly situated to him—that is, one who refused to obey a direct order under similar circumstances—was not terminated, he cannot succeed on his equal-protection claim.

■ Moreover, even if Powell could show that there was another firefighter who was similarly situated—one who disobeyed a direct order under similar circumstances or even one who was working off-shift for a fellow officer—but who was treated differently, his claim would still fail. As stated, a necessary second element for an equal-protection claim is that the defendant unequally applied the facially neutral statute "for the purpose of discriminating against the plaintiff." *Strickland v. Alderman*, 74 F.3d at 264. The

critical question therefore is what is a 'discriminatory purpose.'

" ' "Discriminatory purpose" implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part "because of" ... its adverse effects upon an identifiable group.' " *E & T Realty v. Strickland*, 830 F.2d at 1114 (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)). Thus, for Powell to prevail, the "defendants' conduct must have been deliberately based on an *unjustifiable, group-based standard.*" *Id.* (emphasis added). Here, Powell has not identified an 'unjustifiable, group-based standard' that was arguably the basis for the defendants' termination of his employment.[3]

ii. Due Process

■ Powell contends that the defendants violated the due process clause of the fourteenth amendment by terminating him without conducting a proper investigation into his stated reason for refusing to obey the order that led to his dismissal. Due process, however, required no such investigation. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46, 105 S.Ct. 1487, 1493–95, 84 L.Ed.2d 494 (1985). Due process requires that there be " 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* at 542, 105 S.Ct. at 1493 (citations omitted). The hearing

---

**3.** Powell does not fit or claim to fit any suspect or quasi-suspect classification such as race, gender, or alienage, *see E & T Realty v. Strickland*, 830 F.2d at 1113 n. 7, nor any other arguably unjustifiable classifications. (With this comment, however, the court should not be understood to limit 'unjustifiable, group-based standard' to suspect or quasi-suspect classifications. That issue is not before the court.)

Courts have recognized that the equal-protection clause also prohibits singling out persons to punish them for the "exercise of fundamental rights." *Futernick v. Sumpter*

*Township,* 78 F.3d 1051, 1056 (6th Cir.1996). *See also Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1376, 1378, 1381 (11th Cir. 1994) (overruling summary judgment on equal-protection claim where there was evidence that the town had "retaliated" against a corporate plaintiff because its principal officer had "opposed the candidacy of several members of the [town]"), *cert. denied,* 513 U.S. 1080, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995). The court has already indicated that there is no evidence that the defendants retaliated against Powell for the exercise of any fundamental right.

**1334**

"need not definitively resolve the propriety of the discharge," but it should involve a determination of whether there are "reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495.

Powell was given two full hearings during which he presented his side of the story. He admitted at both hearings that he refused to obey a direct order and explained why he thought that he was justified in doing so. Both Mayor Folmar and the Personnel Board found that he was not justified in light of the department's weight-management regulations. Due process required nothing more.

## IV. CONCLUSION

For the foregoing reasons, Powell has failed to show that a genuine issue exists as to whether the defendants violated his rights under the first and fourteenth amendments, and the defendants are therefore entitled to judgment as a matter of law.

An appropriate judgment will be entered.