**A.D. SUMMERS, Hazel Summers, Renee Summers and Alan Summers, Plaintiffs,**

v.

**CITY OF RAYMOND, MISSISSIPPI, Defendant.**

**No. CIV. A. 399CV187LN.**

United States District Court, S.D. Mississippi, Jackson Division.

March 30, 2000.

---

Vann Fredric Leonard, Vann F. Leonard, Attorney, Dale F. Schwindaman, Jr., Dale F. Schwindaman, Jr., Attorney, Jackson, MS, for Plaintiffs.

Gary E. Friedman, Aubry Matt Pesnell, Phelps Dunbar, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs A.D. Summers, Hazel Summers, Renee Summers and Alan Summers filed this action against the City of Raymond seeking damages, along with declaratory and injunctive relief, based on allegations that the City has violated their right to equal protection, as guaranteed them by the Fourteenth Amendment of the United States Constitution, by selectively targeting them for towing of their vehicles from the right-of-way alongside a particular street within the city. The City has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, contending that plaintiffs cannot establish an equal protection claim on the facts alleged and/or evidence produced and that their complaint is therefore due to be dismissed. Plaintiffs have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion is well taken and should be granted.

The following facts are not in dispute. A.D. Summers and Hazel Summers own a home on Court Street in the City of Raymond, Mississippi. Prior to 1996, they accessed their carport by a private drive that abutted their property. In 1996, however, the adjacent landowner sued the Summers to remove a cloud on his title created by their use of this driveway. In September 1996, the Hinds County Chancery Court, rejecting the Summers' claim of an easement by necessity, enjoined them from thereafter using the private driveway. When the Summers continued to use the driveway, the landowner erected a fence to prevent them from using the driveway. At that point, the Summers, being unable to access their carport, began parking alongside the street in front of their home; and their children, Renee and Alan, who apparently visit their parents frequently, also began parking their cars along Court Street, across the street from their parents' home.

On February 5, 1999, the Board of Aldermen sent a letter to the Summers advising that the City had received complaints that the Summers' parking of their and their visitors' cars on both sides of

Court Street had created a "bottleneck" in traffic. The letter directed that they cease parking on the north side of Court Street, failing which the vehicles would be towed. The Summers disregarded this warning, and Renee and Alan continued to park on the north side of the street. On February 18, a police officer went to the Summers home, and asked that the cars on the north side of the street, belonging to Renee and Alan, be moved. They refused and the cars were towed. Again on February 21, 1999, a police officer asked that cars on the north side of the street, belonging to Alan Summers and Mark Akers, Renee Summers' boyfriend, be moved. They refused and the cars were again towed, precipitating the present lawsuit by plaintiffs for alleged violation of their equal protection rights.

In this action, plaintiffs allege that although other persons also park their vehicles along Court Street, on both the south and north sides of the street, the City has towed only their vehicles. They submit that the City's selective treatment of them is impermissibly based on a bad faith intent to injure them and thus violates their equal protection rights. In its motion for summary judgment, the City takes the position that plaintiffs have not shown that other individuals who allegedly parked on city streets but were not towed were similarly situated to them; that fatal to their equal protection challenge is the fact that they have not alleged or shown that any disparate treatment they may have received was class-based; that even if, as plaintiffs contend, an equal protection violation does not depend on proof of class-based unequal treatment but may be proven on the basis of a bad faith intent to injure, plaintiffs have not presented evidence that would satisfy that standard;[1] and that in any event, plaintiffs have failed to show that the City lacked any rational basis for its decision to tow their vehicles.

■ While "the Equal Protection Clause essentially directs that all persons similarly situated be treated alike," *Wheeler v. Miller*, 168 F.3d 241, 251 (5th Cir.1999), " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation'," *Allred's Produce v. United States Dept. of Agriculture*, 178 F.3d 743, 748 (5th Cir.1999) (quoting *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). It has thus been held that to establish an equal protection claim, a plaintiff must make a two-pronged showing: he must first prove that similarly situated individuals were treated differently, and further prove that this disparate treatment "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Allred's Produce*, 178 F.3d at 748. *See also United States v. Lawrence*, 179 F.3d 343 (5th Cir.1999) (" '[T]he decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.' ") (quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985)).

■ While equal protection claims ordinarily have been premised on allegations of class-based discrimination, the Supreme Court has recently clarified that the protection afforded by the equal protection clause is not so limited. In *Village of Willowbrook v. Olech*, —— U.S. ——, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the Court recognized that successful protection claims may, and have, been "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 1074. The Court reiterated that " '[t]he purpose of the equal protection clause of

---

1. Though it appears that plaintiffs may have undertaken to allege substantive and/or procedural due process violations, and that they have alluded, as well to an Eighth Amendment violation, plaintiffs have not conceded that these claims should be dismissed.

the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' " *Id.* at 1074–75 (quoting *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923)) (quoting *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918)). Thus, defendant's contention that plaintiffs' claim is foreclosed due to their failure to charge class-based discrimination is without merit.[2] The court nevertheless concludes that plaintiffs' claim is due to be dismissed, for in the court's opinion, the evidence which plaintiffs have presented is not sufficient to sustain their burden to create a genuine issue of material fact as to the elements of their claim for relief. More to the point, they have shown neither that similarly situated persons were treated differently nor that the City lacked a rational basis for its actions toward them.

The court recognizes that plaintiffs have presented evidence that other persons have parked their cars alongside Court Street—sometimes even *on* Court Street. And the court is likewise aware of plaintiffs' contention that their parking along Court Street did not, in fact, create a "bottleneck", contrary to the City's assertion in its letter to the Summers directing that they cease this parking practice.

However, while it may be true that others parked alongside Court Street, there is no evidence that the City ever received complaints that any of those other vehicles was creating a traffic problem; and furthermore, plaintiffs have offered no proof to refute the City's evidence that a member of the Board of Aldermen, as reported to the Board in its meeting of February 2, 1999, had received "several complaints concerning the vehicles parked on both sides of the street in front of the Summers residence". Thus, those other individuals who parked their cars along Court Street were not similarly situated to plaintiffs in that they were not the subject of complaints.

Moreover, while it may be true plaintiffs' parking their cars on both sides of Court Street did not create a traffic hazard, the undisputed evidence of record shows that the Board did receive complaints that their parking along Court Street was creating a traffic hazard. Whether it actually was or was not is beside the point, for what is relevant for purposes of evaluating plaintiffs' equal protection claim is whether the Board had a rational basis for its decision to have plaintiffs' cars towed. *See Wheeler,* 168 F.3d at 252 ("Unless a suspect class or fundamental right is involved, we generally employ the rational basis test in deciding equal protection claims."). It clearly did, that basis being the complaints the Board received that plaintiffs' vehicles were cre-

---

**2.** Some courts had held that the only cognizable equal protection claims were those which alleged class-based or group-based treatment. *See Futernick v. Sumpter Township,* 78 F.3d 1051 (6th Cir.1996) (allegation of selective enforcement of law on basis of malice or bad faith, but without claim of racial or other class-based animus, insufficient to support equal protection claim); *see also Powell v. City of Montgomery,* 56 F.Supp.2d 1328 (M.D.Ala.199) (for equal protection plaintiff to prevail, the "defendants' conduct must have been deliberately based on an unjustifiable, group-based standard"). The Fifth Circuit had not purported to decide the question one way or the other. In *Wheeler v. Miller,* 168 F.3d 241, 251 (5th Cir.1999), in fact, the Fifth Circuit expressed that it was "not convinced"

that the plaintiff "ha[d] even asserted a cognizable equal protection claim," for "[w]hile his petition alleges a 'pattern of discrimination' and that [he] 'has been discriminated against,' his petition did not allege discrimination based on his membership in a particular class." *Id.* The court commented that "[o]rdinarily equal protection claims are premised on allegations of such class-based discrimination," whereas the plaintiff therein was claiming that "he was individually singled out for unfair treatment—that he [was] a 'class of one.'" *Id.* The court said that "[w]hether equal protection rights extend to such claims simply because the plaintiff claims 'discrimination' is unclear." *Id.* at 251–52. The answer to the question, after *Olech,* is now clear.

ating a traffic hazard. For these reasons, and while the court is not unsympathetic to the Summers' plight, the court is of the opinion that defendant's motion for summary judgment is well taken and should be granted.[3]

Accordingly, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

3. Plaintiffs assumed, and with good reason, that in order to sustain their claim, they would need to demonstrate that the City's motivation in subjecting them to disparate treatment was a "bad faith intent to injure." This conclusion was based on a number of circuit court opinions recognizing that equal protection claims, even if not class-based, could succeed on proof that the defendant's selective treatment was based on a malicious or bad faith intent to injure a person. *See Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen,* 878 F.2d 16, 21 (1st Cir.1989) ("[E]qual protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."); *LeClair v. Saunders,* 627 F.2d 606, 609–10 (2d Cir.1980) (equal protection action can be based on group membership, the exercise of fundamental rights, or "malicious or bad faith intent to injure a person"); *Esmail v. Macrane,* 53 F.3d 176, 180 (7th Cir.1995) ("What [the Equal Protection Clause] does require, and what Esmail may or may not be able to prove, is that the action taken by the state, whether in the form of prosecution or otherwise, was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective."). In *Olech,* the Supreme Court concluded that the plaintiff's allegations that the defendant's disparate treatment was "irrational and wholly arbitrary" were "sufficient to state a claim for relief under

traditional equal protection analysis," "quite apart from the [defendant's] subjective motivation." *Olech,* — U.S. at ——, 120 S.Ct. at 1074. The Court thus affirmed the judgment of the Court of Appeals without reaching "the alternative theory of 'subjective ill will' relied on by that court." *Id.* In any event, even if proof of a malevolent intent would have been required had plaintiffs succeeded in adducing sufficient proof on the other elements of their claim, they did not present such evidence as would create a reasonable inference that the City's decision to tow their vehicles was motivated by a bad faith intent to injure them.

In this regard, plaintiffs' theory is that the City Attorney, John Fike, harbors personal animosity toward them and that his ill-will toward them is the root cause of the City's actions against them. Their evidence is not even sufficient to support a reasonable inference that Mr. Fike personally had any animosity toward plaintiffs, much less to support a further inference that the *City* was motivated by ill-will toward them. And even if one could somehow draw from plaintiffs' evidence the conclusion that Mr. Fike had this alleged animosity, that would avail plaintiffs nothing inasmuch as Mr. Fike was not a decision-maker for the City. He may have written a letter to the plaintiffs regarding their parking along Court Street, but that was done at the direction of the Board of Aldermen; and at all times, the ultimate decision whether to take action against plaintiffs and/or what action to take was not his to make but that of the Mayor and Board of Aldermen.