**POTATO SALES COMPANY, INC., Petitioner,**

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

No. 95–70845.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1996.

Decided Aug. 5, 1996.

Patricia J. Rynn, Bart M. Botta, Rynn & Janowsky, Newport Beach, California, for petitioner.

M. Bradley Flynn, Office of the General Counsel, United States Department of Agriculture, Washington, D.C., for respondent.

Before BRUNETTI and RYMER, Circuit Judges, and TANNER,* District Judge.

RYMER, Circuit Judge:

Potato Sales Company, Inc. petitions for review of the decision of the Secretary of the United States Department of Agriculture (USDA),[1] adopting the decision of the admin-

---

* Honorable Jack E. Tanner, Senior United States District Judge, Western District of Washington, sitting by designation.

1. Donald A. Campbell, the Judicial Officer (JO) of the USDA, entered the decision and order. The JO's order is deemed to be the final order of

istrative law judge that revoked Potato Sales's license under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a *et seq.*, for misrepresenting the place of origin on 7,554 cartons of New Zealand apples.

We have jurisdiction, 28 U.S.C. § 2342, and deny the petition for review.

## I

Potato Sales holds a license under the PACA. Sometime in March or April 1992, Lynn Chou of TSL Trading, Inc., d/b/a SL International, approached Don Beck, Potato Sales's vice president in charge of fruit sales and son-in-law of Jack Berlin, its president and sole shareholder. Chou wanted to buy New Zealand apples from Beck, but indicated that her customer, Ever Justice Corporation, required them to be repacked so that the lids would not identify the products as New Zealand apples. Beck told Chou that this practice was "not customary trade" and was "not something that Potato Sales ordinarily would do." Nevertheless, Beck agreed to the relidding to "satisfy somebody to do the business and get the order." Potato Sales charged $33 per carton plus an additional $5 per carton for the relidding. Beck ordered box lids from a supplier in Washington. Chou and a representative from Ever Justice inspected a sample pallet before paying for the apples.

At some point, SL International asked Potato Sales to peel the stickers from the apples for the last 6 pallets loaded at the tail of each container, but Beck didn't do this. In any event, four Potato Sales employees worked for nine days each to relid the apple cartons ordered by SL International.

During April and May Potato Sales filled three orders and shipped a total of nine trailers with 7,554 relidded cartons of New Zealand gala apples to SL International, which in turn sold them to Ever Justice for shipment to Taiwan under an invoice listing

the commodity as "U.S. Fresh Apples." Taiwanese officials inspected the second shipment and found that the apples were misbranded. The third shipment was then diverted to a buyer in Hong Kong.

The USDA instituted proceedings against all three entities, alleging "flagrant," "repeated," and "wilful" violations of PACA, 7 U.S.C. § 499b(5), and seeking revocation of each entity's PACA license.[2] Ever Justice settled before the administrative hearing, agreeing to a 90–day suspension of its PACA license and a $50,000 penalty.

By the time of the hearing, Potato Sales was out of business. It had filed for bankruptcy, had no employees, and both Beck and Berlin were employed elsewhere.

The Chief ALJ, Victor W. Palmer, concluded that Potato Sales and SL International violated PACA by misbranding the cartons; that the violations were "flagrant," "repeated," and "wilful"; and that Potato Sales's PACA license should be revoked. The ALJ's conclusions were adopted on appeal by the Judicial Officer, Donald A. Campbell. Potato Sales timely filed this petition for review.

## II

The scope of our review of administrative decisions is narrow: administrative agency decisions will be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. . . ." *Farley and Calfee, Inc. v. U.S. Dept. of Agriculture,* 941 F.2d 964, 966 (9th Cir.1991) (citation and internal quotation omitted). We are to uphold an agency's findings of fact if they are supported by substantial evidence. *Hawaii Helicopter Operators Ass'n v. FAA,* 51 F.3d 212, 215 (9th Cir.1995). An agency's conclusions of law are subject to de novo review, with deference to the agency's "reasonable construction" of the statute and regulations. *Mester Mfg. Co. v. INS,* 879 F.2d 561 (9th Cir.1989).

the Secretary of the USDA pursuant to 7 U.S.C. § 499j and 7 C.F.R. § 1.142(c).

**2.** Section 499b(5) makes it unlawful for a licensee to misrepresent the State or region of origin of any perishable agricultural commodity. PACA

in turn provides that no entity may carry on the business of a commission merchant, dealer, or broker in perishable agricultural commodities without a valid and effective PACA license. 7 U.S.C. § 499c(a).

We may not overturn the Secretary's choice of sanction unless it is "unwarranted in law ... or without justification in fact." *Farley*, 941 F.2d at 966 (citation and internal quotation omitted). "The fashioning of an appropriate remedy is for the Secretary of Agriculture and not for the court." *Magic Valley Potato Shippers, Inc. v. Secretary of Agriculture*, 702 F.2d 840, 842 (9th Cir.1983) (citation and internal quotation omitted). Thus, "[t]he court may decide only whether, under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in (his) choice of the remedy.'" *Id.* (citation omitted).

## III

PACA, 7 U.S.C. §§ 499a *et seq.*, makes it unlawful for any licensee to misrepresent the origin of a perishable agricultural commodity, 7 U.S.C. § 499b(5), and provides for license revocation for "flagrant" or "repeated" violations, 7 U.S.C. § 499h(a). Where the violation is "willful," license revocation proceedings may be initiated without a prior written warning and opportunity to demonstrate or achieve compliance. 7 C.F.R. § 46.45(e)(5); *see also* 5 U.S.C. § 558(c). Here, the parties do not dispute that Beck's conduct is imputed to Potato Sales, 7 U.S.C. § 499p, and that Potato Sales violated PACA by relidding 7,554 cartons of New Zealand apples. Nor do they dispute that Potato Sales did not receive a written warning or an opportunity to cure prior to the institution of this disciplinary action. Accordingly, we need determine only whether the Secretary properly concluded that Potato Sales's violations were "flagrant" or "repeated" and "wilful" and, if so, whether the Secretary acted within his authority by revoking Potato Sales's license.

## IV

Potato Sales argues that the Secretary erred in concluding that its violations were "flagrant" because 7 C.F.R. § 46.45 defines its conduct as either a "serious" or "very serious" violation; the Secretary improperly relied primarily on the number of lots involved; and the Secretary erroneously distinguished other misbranding cases. We disagree.

Examples given in PACA regulations suggest that a "flagrant" violation involves knowing conduct, whereas a "serious" or a "very serious" violation typically involves only accidental or negligent conduct. *Compare* 7 C.F.R. §§ 46.45(a)(3)(i)-(iii) (flagrant violations), with 7 C.F.R. § 46.45(a)(2)(ii) (very serious violations), and 7 C.F.R. §§ 46.45(a)(1)(i)-(iv) (serious violations). Other indicia of "flagrant" rather than "serious" or "very serious" violations are a large number of transactions, committed over a period of time. *See, e.g., In re Stemilt Growers, Inc.*, 49 A.D. 520, 1990 WL 230367 (1990) ("flagrant" violation where grower sold and shipped containers of cherries labeled grade "Washington No. 1" after official inspected and informed grower that cherries failed to make that grade); *In re Magic Valley Potato Shippers, Inc.*, 40 A.D. 1557 (1981) ("flagrant" violation where shipper shipped nine lots of potatoes labeled grade "U.S. No. 1" after official inspected and informed shipper that potatoes failed to make that grade), *aff'd*, 702 F.2d 840 (9th Cir.1983); *In re Maine Potato Growers*, 34 A.D. 773 (1975) ("flagrant" violation where, over the course of four years, grower sold and shipped fourteen lots of potatoes labeled "U.S. No. 1, 50 lbs Net" after officials repeatedly inspected and notified grower after each violation that shipments did not make grade), *aff'd*, 540 F.2d 518 (1st Cir.1976); *E.J. Harrison & Son, Inc.*, 27 A.D. 1339 (1968) ("flagrant" violation where shipper shipped six lots of potatoes marked "U.S. No. 1" when they failed at the time of shipment to make the grade). *Accord* 10 Harl, *Agricultural Law* § 72.09[3], p. 72–35 (1995) ("'Flagrant' violations have been stated to be those which are committed with knowledge of their occurrence, involve a large number of transactions, are committed over a period of time, and involve a substantial sum of money.")

Here, the JO found that Beck's conduct was intentional, deliberate, and knowing, that a large volume of produce was involved, and that the shipments spanned a period of a month and a half. These findings are supported by substantial evidence.

Potato Sales faults the JO's conclusion that its conduct was "flagrant" on the footing that his primary rationale was because the "serious" and "very serious" definitions under the regulations use the singular language "[a]ny lot of a perishable agricultural commodity." We don't read the JO's decision as turning on the fact that more than a single lot was misbranded, although the quantity of cartons and number of shipments involved were factors that he took into account. Rather, the ruling was based on the JO's finding that Potato Sales's conduct was intentional, knowing, and deliberate.

Potato Sales also contends that the decision was arbitrary because it incorrectly distinguished the Secretary's three most recent misbranding decisions as far less serious than this one. We do not agree. In *In re Magic Valley*, 40 A.D. 1557, there was a dispute over the grade of the potatoes; the shipper genuinely misapprehended the distinction between shipping point and receiving point inspections; and it was a one-time occurrence involving a small portion of a single day's shipment. Likewise, in *In re Stemilt*, 49 A.D. 520, the shipper relied upon a 25–year old prior practice by inspection authorities that allowed domestic shipment even after foreign shipment was prohibited due to misbranding. In *In re Maine Potato Growers*, 34 A.D. at 795, although the grower had received several warnings of past violations over the past four years, the proceeding involved a failure to take steps to assure that no violations would occur; it did not involve current shipment of misbranded commodities despite knowledge of the current misbranding.

Accordingly, the Secretary's conclusion that Potato Sales's violations were "flagrant" was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. We need not, therefore, decide whether Potato Sales's violations were also "repeated."

## V

■ Potato Sales further argues that the Secretary erred in concluding that its conduct was "wilful" because "wilfulness" requires a showing of "gross neglect of a known duty"; Potato Sales was unaware of Taiwan's import restrictions; Beck did not believe that he was misleading anyone because the customer knew what was inside the cartons; Potato Sales was at most lax or careless; and Beck was the only person in a position of authority who knew about the relidding. Therefore, Potato Sales claims, the Secretary simply "surmised without a factual basis" that Beck was deliberately deceptive. We cannot agree.

■ Potato Sales relies on the definition of willfulness in *Capitol Packing v. United States*, 350 F.2d 67, 78–79 (10th Cir.1965)—that it amounts to "an intentional misdeed or such gross neglect of a known duty as to be the equivalent thereof"—but we are bound by our own definition. In this circuit, a violation is "wilful" if the violator "(1) intentionally does an act which is prohibited,-irrespective of evil motive or reliance on erroneous advice, or (2) acts with careless disregard of statutory requirements...." *Lawrence v. Commodity Futures Trading Comm'n*, 759 F.2d 767, 773 (9th Cir.1985) (citation and internal quotation omitted). *See also Agricultural Law* at 72–36.

There is substantial evidence to support the Secretary's finding that the violations were "wilful." Beck charged almost a 20% premium for the relidding, gave a demonstration of the effectiveness of the relidding before payment, was asked to remove stickers only from the last several pallets in each container, expressed doubts about the propriety of his conduct, and loaded nine containers in three separate shipments with more than 7,000 cartons of New Zealand apples relidded to look like Washington apples. As the JO suggested, it is hard to imagine how this doesn't add up at least to acting in "careless disregard" of PACA's misbranding regulations.

■ Potato Sales points out that it was not an exporter, that Beck knew nothing about Taiwanese import restrictions, and that he could not have acted wilfully because he didn't believe that anyone would be deceived since his customer and its customer had asked for the relidding. Potato Sales also argues that the JO improperly inferred that

its conduct was wilful, contrary to *Farrow v. United States Dept. of Agr.,* 760 F.2d 211 (8th Cir.1985). In *Farrow,* the JO simply "inferred" or "assumed" intent without factual support; here, however, there is substantial evidence supporting the JO's finding that Beck's actions were deliberate and not merely negligent. Even though relidding did not deceive SL International or Ever Justice, it *was* deceptive. Unlike *Capital Produce Co., Inc. v. United States,* 930 F.2d 1077, 1079 (4th Cir.1991), where the evidence showed only a single substitution of products and negligent supervision instead of deliberate action, Beck went to considerable lengths to relid, buying cartons from Washington, devoting substantial work-hours to the project, and charging extra for it. In addition, while Beck did not peel off the New Zealand stickers on apples in cartons packed in the rear of the containers, he did continue to relid despite the clear signal of an effort to hide something from inspection. The JO's findings thus have substantial factual support and were not legally erroneous.

Accordingly, the JO did not arbitrarily conclude that Potato Sales's violations were "wilful." Therefore, neither prior notification nor an opportunity to demonstrate compliance was required. 7 C.F.R. § 46.45(e)(5); 5 U.S.C. § 558(c).

## VI

■ Potato Sales argues that the order permanently revoking its license is contrary to the USDA's own express policy, articulated in *In re Stemilt Growers Inc.,* 49 A.D. 520, 1990 WL 320367, not to remove a firm that engages in misbranding from the produce industry. While *Stemilt* did say that "it is not the policy of the Department to remove from the industry a firm that engages in misbranding," *id.* at *7, the JO there was not relying on an official policy statement from the USDA but on two prior cases involving license suspensions, *In re Magic Valley,* 40 A.D. 1557, and *In re Maine Potato Growers,* 34 A.D. 773. As none of these decisions considered conduct that put the license itself in jeopardy, the Secretary is not constrained by their statements about policy in a case such as this, where flagrant and wilful conduct has been found.

The plain language of § 499h(a) itself allows the Secretary to revoke a license for "flagrant" or "repeated" misbranding violations. It provides that when the Secretary determines that a violation of § 499b has occurred he may "suspend the license of such offender for a period not to exceed ninety days, except that, if the violation is flagrant or repeated, the Secretary may, by order, revoke the license of the offender." In any event, license revocation is consistent with the USDA's sanctions policy as it has been construed. In *In re S.S. Farms Linn Country, Inc.,* 50 A.D. 476 (1991), *aff'd,* 991 F.2d 803 (9th Cir.1993) (Table), the JO spelled out the USDA's sanctions policy as follows:

> each sanction will be determined by examining the nature of the violations in relation to the remedial purposes of the regulatory statute involved, along with all relevant circumstances, always giving weight to the recommendations of the administrative officials charged with the responsibility for achieving the congressional purpose.

50 A.D. at 497. Revocation of Potato Sales's license was consistent with this policy.

■ Potato Sales further maintains that removing it from the industry does not serve either USDA's policy for misbranding violations or the interests of deterrence since Potato Sales had no knowledge of, did not benefit from, and has already been penalized (by going out of business) for the violations. Potato Sales also complains that Ever Justice entered a more favorable settlement with a less severe sanction. It also contends that the Secretary failed to take mitigating factors into account.

■ We agree that mitigating factors must be considered in determining the appropriate sanction. *Norinsberg Corp. v. U.S. Dept. of Agr.,* 47 F.3d 1224, 1227 (D.C.Cir.) (citing *In re S.S. Farms,* 50 A.D. at 497), *cert. denied,* —— U.S. ——, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995). However, the Secretary did consider all relevant circumstances in this case. *Id.* The choice of sanction was based on the key role that Potato Sales

played in the misrepresentations; the blatant and deliberate nature of the conduct; the number of transactions involved; the span of time during which the relidding and shipping occurred; and on evidence showing harm to trade with Taiwan, an important customer for United States apples, and to the credibility of the Washington State apple label as well as the trust relationship that is necessary in the produce industry. The JO also considered the need to deter this type of violation in the future. The fact that Potato Sales was already out of business and that the only individuals likely to be affected by the revocation were its shareholders were also noted, as was the fact that this was Potato Sales's first brush with the law.

■ While Potato Sales complains about Ever Justice's disparate treatment, a sanction resulting from negotiation rather than adjudication is not something we can consider. *Agricultural Law* at 72–45 (citing *In re Sol Salins,* 37 A.D. 1699, 1737 (1978)).

Other mitigating factors that Potato Sales suggests should have influenced the result, but did not, are either not supported by the record or are immaterial. For example, the record does not support Potato Sales's claim that it was an "unwitting repacker," as there was ample evidence that Beck played an integral role, with full knowledge of the deceptive relidding. Nor does the record support Potato Sales's assertion that Beck had a good faith belief that there was no violation, for there is ample evidence that he knew what he was doing. Likewise, the evidence does not support Potato Sales's argument that its actions were attributable to "lax management practices" and the "carelessness" of one employee rather than to the deliberate, wilful, and knowing conduct of a corporate officer.

■ That Beck and the four employees were the only ones involved in the relidding is also not dispositive, as PACA provides that Beck's conduct is imputed to Potato Sales. *See* 7 U.S.C. § 499p. By the same token, the fact that Potato Sales did not realize a profit because SL International ultimately did not pay for the apples does not compel a different result; as Beck

conceded, he agreed to relid to get the business.

Revoking Potato Sales's license was within the Secretary's authority, and substantial evidence supports his decision to do so.

PETITION DENIED.