**AMERICAN RAISIN PACKERS, INC,**
a California corporation,
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant**

**No. CIV.F 01–5606 AWI SM.**

United States District Court,
E.D. California.

March 5, 2002.

Brian C. Leighton, Law Offices of Brian Leighton, Clovis, CA, for Plaintiff.

John K. Vincent, U.S. Atty., Sacramento, CA, E. Robert Wright, U.S. Atty's Office, Fresno, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ISHII, District Judge.

This action is an appeal of a decision by the United States Department of Agriculture ("USDA") that resulted in Plaintiff American Raisins Packers, Inc.'s disbarment from inspection services for one year. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(a)(2).

### PROCEDURAL HISTORY

**A. Background of Administrative Proceedings** [1]

Plaintiff is a processor of California raisins. In August 1998, Plaintiff sold raisins to the USDA pursuant to USDA Invitation Number 21, issued on June 3, 1998, solicit-

---

1. Because no party has provided the court with the Administrative Record, the portions of this section pertaining to the administrative proceedings are taken from the parties' briefs and the final decision of the USDA. Upon learning that the court did not have the Administrative Record, both parties offered to provide the court with it. However, the court has determined that the Administrative Record is not necessary to resolve the issues raised by Plaintiff.

ing bids for Thompson Seedless Raisins for domestic feeding programs.

On December 3, 1998, the Agricultural Marketing Service ("AMS"), an agency of the USDA, filed a complaint before the Secretary of Agriculture. The complaint was filed pursuant to the Agricultural Marketing Act of 1946, as amended, 7 U.S.C. §§ 1621–1632, and the regulations and standards issued under the Agricultural Marketing Act, 7 C.F.R. Part 52. The complaint alleged that between August 5 and August 11, 1998, Plaintiff violated 7 C.F.R. § 52.54 by misrepresenting Golden Raisins as Thompson Seedless Raisins.

On May 24, 2000, a hearing was held in Fresno, California before an Administrative Law Judge ("ALJ") of the USDA. On November 21, 2000, the ALJ issued a decision. The ALJ found that Plaintiff's failure to provide 100% Thompson Seedless Raisins to the USDA for sampling constituted a misrepresentation and a violation of 7 C.F.R. § 52.54. Specifically, the ALJ found Plaintiff had misrepresented the product that it had presented for inspection as being 100% Natural Thompson Seedless Raisins because some of the containers had Golden Raisins, which contained sulphur, in them. The ALJ barred Plaintiff from receiving inspection services for one year.

Plaintiff appealed the decision to a Judicial Officer ("JO") for the USDA, to whom the Secretary of the Agriculture has delegated the authority to issue final decisions of the USDA. Plaintiff contended that there should be no debarment because there was no finding of any willfulness in the violation. The AMS also appealed to the JO, arguing that the debarment should have been for four years. On May 1, 2001, the JO issued a decision. The JO adopted the ALJ's decision and order with minor modifications and upheld the one year debarment.

**B. Background of Current Action**

On May 18, 2001, Plaintiff filed a complaint for review of an administrative decision under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–706. The complaint alleges that the USDA's decision must be set aside pursuant to 5 U.S.C. § 706 because the decision and order is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of statutory jurisdiction and authority. The complaint also contends that 7 C.F.R. § 52.54 does not permit debarment from inspection services for negligent misrepresentation. The complaint alleges that 7 C.F.R. § 52.54 requires willfulness, which the ALJ and JO found was not present in this case.

On November 13, 2001, Plaintiff filed a motion for summary judgment. Plaintiff contends that 7 C.F.R. § 52.54 allows debarment for only intentional acts of fraud, misrepresentation, or deceptive practices. Because the ALJ and JO both found there was no willfulness or deceptive or fraudulent acts or practices, Plaintiff believes section 52.54 does not apply. Plaintiff's brief offers three proposed undisputed facts concerning the conclusions of the ALJ and JO that Plaintiff's conduct was not intentional.[2]

On December 17, 2001, Defendant filed an opposition to Plaintiff's motion. De-

---

2. Plaintiff's brief also provides Plaintiff's interpretation of the evidence submitted at the administrative hearings. Plaintiff states these additional facts are only provided to give the court background information. In its briefs and at the hearing, Plaintiff stated it is only the facts concerning the actual findings of the ALJ and JO that are relevant because Plain-

fendant agrees that the JO found Plaintiff's conduct was a misrepresentation and was not willful. Defendant's characterize Plaintiff's actions as a failure to take steps to assure the applicable inspection regulations were followed or a negligent misrepresentation. However, Defendant contends these non-willful actions still constitute a violation of section 52.54. Concerning Plaintiff's proposed statement of undisputed facts, Defendant states that it does not object to the decision of the JO and requests the court review the entire decision.

On December 17, 2001, Defendant filed its own motion for summary judgment. Defendant contends that the JO's decision is supported by substantial evidence. Defendant contends Plaintiff violated section 52.54(a) by misrepresenting that the raisins it was packing were only Thompson Seedless Raisins when Golden Raisins, which contained sulphur, were also mixed in with the Thompson Seedless Raisins. Defendant contends that the inspection regulations and facts support Plaintiff being debarred for one year for violating section 52.54. Defendant also provides proposed undisputed facts which concern the evidence admitted during the administrative process.

On January 11, 2002, Plaintiff filed a reply to Defendant's opposition to Plaintiff's motion for summary judgment along with an opposition to Defendant's motion for summary judgment. Plaintiff argues that its debarment means that Plaintiff will have to shut down its business, and the court should recognize the harshness

of this penalty when evaluating whether negligent or unintentional conduct violates section 52.54. Plaintiff again argues that section 52.54 only allows debarment for intentional acts of fraud, misrepresentation, or deceptive practices. Plaintiff's brief does not respond to Defendant's proposed undisputed facts.

On February 6, 2002, Defendant filed a reply to Plaintiff's reply to Defendant's opposition to Plaintiff's motion for summary judgment.[3]

On February 25, 2002, the court held a hearing. At the hearing, the parties agreed that the issue in this action is whether section 52.54 requires an intent to commit a misrepresentation beyond that found by the ALJ and JO.

## LEGAL STANDARDS

Summary judgment shall be granted when the undisputed facts entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment motions are particularly appropriate where, as here, the court's review is of an administrative record. *See Adams v. United States*, 318 F.2d 861, 865 (9th Cir. 1963).

When a motion for summary judgment is before the court, the court is ordinarily guided by the standards articulated in Federal Rule of Civil Procedure 56(c), which provides that summary judgment is appropriate when there exists no genuine issue of material fact and the moving party should prevail as a matter of law. When the court is called upon to

---

tiff's sole contention is a legal argument on the proper interpretation of section 52.54.

**3.** While Defendant could have filed a reply to Plaintiff's brief to the extent it was an opposi-

tion to Defendant's motion, Defendant was not entitled to file a sur-reply to Plaintiff's reply to Plaintiff's motion.

review an agency decision, however, the standards for summary judgment are modified by 5 U.S.C. § 706(2), at least with respect to factual disputes. The question is not whether there is a genuine issue of material fact, but rather whether the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole.

*Sacramento Regional County Sanitation Dist. v. Thomas,* 668 F.Supp. 1427, 1430–31 (E.D.Cal.1987) (citations omitted), *reversed on other grounds by Sacramento Regional County Sanitation Dist. v. Reilly,* 905 F.2d 1262 (9th Cir.1990).

■ When reviewing an agency decision, the court must first decide whether the agency acted within the scope of its authority. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). This requires the court to ascertain the scope or range of the agency's authority and discretion and determine whether the agency's decision was within that range. *Id.* at 415–16, 91 S.Ct. 814. Second, the court must review the agency's decision and "hold unlawful and set aside agency action, findings, and conclusions" which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (B), (E).

■ In determining whether an agency decision is arbitrary, capricious, or an abuse of discretion, the court determines whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Resources Ltd. v. Robert-*

*son,* 35 F.3d 1300, 1304 (9th Cir.1993); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). When reviewing an agency's decision, the court must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. Agency action is arbitrary and capricious if the agency relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.*

■ "Substantial evidence" within the meaning of 5 U.S.C. § 706(2)(E) is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Western Truck Manpower, Inc. v. United States Dep't of Labor,* 12 F.3d 151, 153 (9th Cir.1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). To determine if an agency's decision is supported by substantial evidence, the court must "carefully search the entire record to determine whether it contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and whether it demonstrates that the decision was based on a consideration of the relevant factors." *Hjelvik v. Babbitt,* 198 F.3d 1072, 1074 (9th Cir.1999) (internal cites and quotations omitted).

■ The court must review an agency's conclusions of law de novo, "with deference to the agency's 'reasonable con-

struction' of the statute and regulations." *Potato Sales Co., Inc. v. Department of Agriculture,* 92 F.3d 800, 803 (9th Cir. 1996) (citing *Mester Mfg. Co. v. INS,* 879 F.2d 561 (9th Cir.1989)). The court must give substantial deference to an agency's interpretation of its own regulations. *Akootchook v. United States,* 271 F.3d 1160, 1167 (9th Cir.2001); *see also Alhambra Hosp. v. Thompson,* 259 F.3d 1071 (9th Cir.2001) (stating that in Ninth Circuit court's review of agency's interpretation of its own regulations is "extremely deferential"). The court's task "is not to decide which among several competing interpretations best serves the regulatory purpose." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). The court must defer to the agency's interpretation of its own regulations unless an alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation. *Id.; In re Transcon Lines,* 89 F.3d 559, 567 (9th Cir.1996); *Providence Hosp. of Toppenish v. Shalala,* 52 F.3d 213, 216 (9th Cir.1995). The "agency's determination must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. 2381 (internal quotations and citations omitted).

■ The court must not substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. 2856. In general, the court must defer to the agency "given that an agency's interpretation of its regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulations." *Anchustegui v. Department of Agriculture,* 257 F.3d 1124, 1128 (9th Cir. 2001).

## UNDISPUTED FACTS

There is no agreed statement of undisputed facts before the court. Neither party adequately responded to the other party's proposed statement of undisputed facts. Defendant requests the court review the JO's decision for itself to determine the JO's factual findings instead of relying on Plaintiff's proposed statement of undisputed facts. Plaintiff did not respond in any way to Defendant's proposed statement of undisputed facts.

### A. Evidence Admitted During the Administrative Hearings

■ The court cannot make any factual findings concerning the evidence admitted during the administrative hearings. While both parties' briefs discuss the evidence admitted during the administrative hearings, the court does not have the Administrative Record before it. The only documents provided to the court are the ALJ's opinion and the JO's opinion. Thus, the court can make no factual findings concerning the evidence, determine whether the evidence is sufficient, or decide whether the JO's factual findings are arbitrary, capricious, an abuse of discretion, or contrary to law. However, at the hearing, Plaintiff clarified that Plaintiff's contentions neither depend on the evidence admitted during the administrative process nor dispute the ALJ's and JO's factual findings. Plaintiff's sole argument is that the factual findings made by the ALJ and JO do not allow for disbarment under section 52.54. Thus, it is unnecessary for the court to make factual findings on the evidence admitted during the administrative hearing.

### B. Agency Decision

The relevant decision being reviewed by this court is the JO's decision as it repre-

sents the final decision of the USDA. The JO found that the AMS's position was that because USDA Invitation Number 21 called only for Thompson Seedless Raisins, Plaintiff engaged in fraud, misrepresentation, and deceptive practices by including sulfur and Golden Raisins with the Thompson Seedless Raisins. *See* JO's Decision at 19. The USDA had contended that a fraudulent practice was shown by: (1) Plaintiff's actions in darkening the Golden Raisins and placing the Golden Raisins where they could be blended with Thompson Seedless Raisins for the purpose of making it difficult for Plaintiff's employees to distinguish the Golden Raisins from the Thompson Seedless Raisins; (2) failing to fully account for the disposition of 30,000 pounds of Golden Raisins; (3) engaging in the practice of mixing poor quality raisins with better quality raisins; (4) deceiving purchasers of raisins for bird feed by darkening Golden Raisins to have them resemble Thompson Seedless Raisins; and (5) failing to provide measures to prevent Golden Raisins from being mixed with Thompson Seedless Raisins. *Id.* at 19–20.

The JO concluded that Plaintiff's failure to provide 100% Thompson Seedless Raisins to the USDA for sampling, as required by USDA Invitation Number 21, constituted a misrepresentation and a violation of 7 C.F.R. § 52.54(a)(1)(ii). *See* JO's Decision at 23. The JO found that USDA Invitation Number 21 called only for Thompson Seedless Raisins. *Id.* at 21. Yet, Golden Raisins were present with the Thompson Seedless Raisins. *Id.* Thus, the JO found that Plaintiff had failed to comply with USDA Invitation Number 21 because the inclusion of any amount of

Golden Raisins with Thompson Seedless Raisins, for whatever reasons, is a misrepresentation of the variety of raisins Plaintiff agreed to supply. *Id.* While the JO found only a relatively small number of Golden Raisins were present, the JO concluded that Plaintiff had violated 7 C.F.R. 52.54(a)(1)(ii). *Id.*

The JO made several findings about Plaintiff's intent. The JO concluded that there was a lack of substantial evidence showing that Plaintiff engaged in a deceptive or fraudulent practice or act. *Id.* at 20. The JO found that "the record does not support a finding that [Plaintiff] manipulated the inspection process for its own benefit." *Id.* at 36. The JO agreed with the ALJ that the record did not support a finding that Plaintiff's violation was willful. *Id.* at 25 & 37.[4] The JO reviewed the ALJ's finding that: "There is a lack of substantial evidence showing that there was a practice of fraudulent misrepresentation or deception." ALJ Decision at 9. The JO modified this finding to read: "There is a lack of substantial evidence showing that there was a deceptive or fraudulent practice or act." JO Decision at 25.

On appeal to the JO, as in this court, Plaintiff had argued that the ALJ erred by ordering debarment because the ALJ did not find willfulness and section 52.54 allows debarment for only intentional acts of misrepresentation, fraud, or deceptive practices. The JO determined that the ALJ had correctly found that Plaintiff had violated 7 C.F.R. § 52.54(a)(1), which allows for debarment for fraud or misrepresentation. *Id.* at 23. The JO concluded

---

**4.** The JO did state that Plaintiff had caught a break on willfulness because Plaintiff " 'barely' escaped being found to have intentionally blended two varieties of raisins when [Plaintiff] was required to provide 100 percent Thompson seedless raisins." JO Decision at 37.

this case hinged on "misrepresentation" and not on a "deceptive or fraudulent practice or act." *Id.* at 25. Because 7 C.F.R. § 52.54(a)(1) is written in the disjunctive, allowing debarment for "[a]ny misrepresentation or deceptive or fraudulent practice of act," the JO concluded Plaintiff could be debarred for a non-willful misrepresentation. *Id.* at 25–26 (quoting 7 C.F.R. § 52.54(a)(1)). The JO concluded that the ALJ properly found a misrepresentation in connection with Plaintiff's submission of samples for inspection. *Id.* at 26. Finally, the JO rejected the USDA's argument on appeal that the evidence showed Plaintiff's actions were willful. *Id.*[5]

## DISCUSSION

Title 7 U.S.C. § 1622 defines the duties of the Secretary of Agriculture relating to agricultural products.

> The Secretary of Agriculture is directed and authorized:
>
> (h) Inspection and certification of products in interstate commerce; credit and future availability of funds; investment; certificates as evidence; penalties To inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, including assessment and collection of such fees as will be reasonable and as nearly as may be to cover the cost of the service rendered, to the end that agricultural products may be marketed to the best advantage, that trading may be facilitated, and that consumers may be able to obtain the quality product which they desire . . . .

Title 7 U.S.C. § 499n(a) authorizes the Secretary to create rules and regulations concerning inspectors and the inspection of perishable agricultural commodities. The AMS has issued regulations governing the inspection and certification of fruits and vegetables, and these rules are found in Chapter I of Title 7. The AMS may debar a company from inspection services for "[a]ny misrepresentation or deceptive or fraudulent practice or act found to be made or committed in connection with . . . the submission of samples for inspection." 7 C.F.R. § 52.54(a)(1)(ii).

### A. Whether the USDA's Decision is Supported by Substantial Evidence

 The first section of Defendant's motion for summary judgment argues that there was substantial evidence to support the administrative decision and it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Defendant cites to the administrative record and Defendant's proposed statement of undisputed facts to support Defendant's arguments.

In its briefs Plaintiff does not respond to this argument nor does Plaintiff respond to Defendant's proposed statement of undisputed facts. At the hearing, Plaintiff clarified that it is neither arguing the factual findings made by the USDA were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law nor arguing that there was not substantial evidence. Plaintiff's contention is that section 52.54 only allows debarment

---

**5.** Other findings by the JO have been omitted because they do not address issues before this court.

for conduct that is found to be willful or intentional. Thus, Defendants' request for summary judgment on this issue is granted because Plaintiff does not contend the factual findings were incorrect.

### B. 7 C.F.R. § 52.54

Both Plaintiff and Defendant request summary judgment on Plaintiff's contention that 7 C.F.R. § 52.54(a)(1)(ii), which Plaintiff was found to have violated, requires willful or intentional misrepresentation. Plaintiff's position is that he cannot be debarred under this provision because the ALJ and JO concluded Plaintiff's actions were not willful or intentional and debarment requires willful or intentional misrepresentation. Defendant contends that a misrepresentation does not have to be willful or intentional to meet the requirements of 7 C.F.R. § 52.54(a)(1).

Title 7 C.F.R. § 52.54 provides the circumstances under which the USDA can debar a company from receiving inspection services.

(a) The following acts or practices, or the causing thereof, may be deemed sufficient cause for the debarment, by the Administrator, of any person, including any agents, officers, subsidiaries, or affiliates of such person, from any or all benefits of the Act for a specified period. The Rules of Practice Governing Formal Adjudicatory Proceedings Instituted by the Secretary Under Various Statutes set forth in §§ 1.130 through 1.151 of this title and the Supplemental Rules of Practice in part 50 of this chapter shall be applicable to such debarment action.

(1) Fraud or misrepresentation. Any misrepresentation or deceptive or fraudulent practice or act found to be made or committed in connection with:

(i) The making or filing of an application for any inspection service;

(ii) The submission of samples for inspection;

(iii) The use of any inspection report or any inspection certificate, or appeal inspection certificate issued under the regulations in this part;

(iv) The use of the words "Packed under continuous inspection of the U.S. Department of Agriculture," any legend signifying that the product has been officially inspected, any statement of grade or words of similar import in the labeling or advertising of any processed product;

(v) The use of a facsimile form which simulates in whole or in part any official U.S. certificate for the purpose of purporting to evidence the U.S. grade of any processed product.

(2) Willful violation of the regulations in this subpart. Willful violation of the provisions of this part of the Act.

(3) Interfering with an inspector, inspector's aid, or licensed sampler. Any interference with, obstruction of, or attempted interference with, or attempted obstruction of any inspector, inspector's aide, or licensed sampler in the performance of his duties by intimidation, threat, assault, bribery, or any other means—real or imagined.

 The JO found that Plaintiff had violated section 52.54(a)(1)(ii), which allows for debarment for "[A]ny misrepresentation or deceptive or fraudulent practice or act found to be made or committed in connection with ... [t]he submission of samples for inspection." As discussed

above, the JO agreed with the ALJ that there was a lack of substantial evidence showing that Plaintiff engaged in a deceptive or fraudulent practice or act. JO's Decision at 20 & 25. The JO and ALJ agreed that Plaintiff's violation and actions were not willful. *Id.* at 25 & 37. The JO concluded that despite the lack of a deceptive or fraudulent practice or act and despite the fact Plaintiff's actions were not willful, Plaintiff still had violated section 52.54(a)(1)(ii) because the conduct constituted a misrepresentation.

In Plaintiff's motion for summary judgment, Plaintiff contends that its conduct cannot result in debarment under section 52.54. Plaintiff argues that section 52.54 requires willfulness before debarment. Plaintiff argues, without citing any authority, that misrepresentation means to deceive or mislead or be dishonest in a representation and requires a state of mind of being deceptive or something intentional, not innocent misrepresentation. Plaintiff argues that it makes no sense to read the statute to allow debarment for innocent or negligence misrepresentation and also allow debarment for a "deceptive or fraudulent practice or act" or a "willful violation."

Defendant argues that the plain reading of section 52.54(a) does not require a misrepresentation to be intentional or willful. Defendant contends willful is only required for a section 52.54(a)(2) violation. Because Plaintiff was found to have violated section 52.54(a)(1), there is no willful requirement. Because the word "misrepresentation" is not modified, Defendant argues the JO correctly found a misrepresentation under section 52.54(a)(1) does not require any intent or willful conduct. In light of the deference that must be given to an agency's reasonable construction of its own regulations, Defendant contends that the JO's interpretation should be enforced.

As discussed above, the court must defer to the agency's interpretation of its own regulations unless an alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation. *Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381; *In re Transcon Lines*, 89 F.3d at 567; *Providence Hosp. of Toppenish*, 52 F.3d at 216.

### 1. Plain Language of Section 52.54

There is no indication Plaintiff's reading of section 52.54 is compelled by section 52.54's plain language. Plaintiff was found to have violated section 52.54(a)(1)(ii), which provides for debarment for "[a]ny misrepresentation or deceptive or fraudulent practice or act found to be made or committed in connection with ... [t]he submission of samples for inspection." As found by the JO, the word "or" separates the words "misrepresentation," "deceptive," and "fraudulent." The use of the word "or" implies that the misrepresentation does not have to be deceptive or fraudulent because these words describe different conduct which can violate section 52.54(a)(1). Plaintiff relies on the fact that the title of section 52.54(a)(1) is "Fraud or Misrepresentation." However, because the word "or" is used between fraud and misrepresentation, the plain reading of this title does not require the misrepresentation to also be committed with fraud. Thus, the plain reading of section 52.54(a)(1) provides that misrepresentation without deceptive or fraudulent conduct violates section 52.54(a)(1).

The word "willful" is nowhere in section 52.54(a)(1). "Willful" is found in section 52.54(a)(2), which allows for debarment for a "[w]illful violation of the regulations in this subpart" and for a "[w]illful violation

of the provisions of this part of the Act." Plaintiff was not found to have violated section 52.54(a)(2). Section 52.54(a) begins "[T]he following acts or practices ... may be deemed sufficient cause for the debarment ..." This sentence clearly implies that 52.54(a)(1), section 52.54(a)(2), and section 52.54(a)(3) are each separate acts that can result in debarment. As such, section 52.54(a)(2)'s willful requirement deals only with section 52.54(a)(2) and the plain reading of section 52.54(a) does not provide for the word willful to be read into section 52.54(a)(1). Thus, the plain reading of section 52.54(a)(1) does not require that the misrepresentation be willful.

In Plaintiff's brief, Plaintiff also argues any misrepresentation must be intentional. The word intentional is found at no place in section 52.54. Thus, the plain reading of section 52.54(a)(1) does not require that the misrepresentation be intentional.

Reviewing the plain reading of section 52.54(a)(1), the term "misrepresentation" stands alone. The plain reading of section 52.54(a)(1) does not require the words "deceptive," "fraudulent," or "willful," from the other provisions of section 52.54(a) nor any other word, such as "intentional," to be read into section 52.54(a)(1) to modify the word "misrepresentation." Thus, this court must defer to the agency's interpretation of its own regulations because the plain language of the statute does not compel a different reading. *See Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381.

## 2. *Intent of USDA When Enacting Section 52.54*

Even if the plain language of a regulation does not compel a different reading than the agency's interpretation the court still need not defer to the agency's interpretation of its own regulations if an alternate reading is compelled by other indicators of the agency's intent at the time the regulation was promulgated. *See Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381

### a. *Public Policy*

Plaintiff argues that policy should not allow the word "misrepresentation" in section 52.54(a)(1) to include even non-willful or innocent misrepresentations. Plaintiff argues that with numerous varieties of raisins processed through the same equipment it is likely a large shipment will often not be one hundred percent one type of raisin. Plaintiff believes that debarment is not appropriate for such a common mistake. Plaintiff also argues that because debarment will most likely close a business, it is a harsh sanction for innocent conduct that is not deceptive, fraudulent, or willful.

While these may be good policy arguments, Plaintiff provides no authority or evidence that these were policy concerns considered by Congress when enacting the relevant statutes or the USDA when enacting the regulations. This court must defer to the agency's interpretation of its own regulations unless an alternative reading is compelled by the agency's intent at the time of the regulation's promulgation. *See Thomas Jefferson Univ.*, 512 U.S. at 512, 114 S.Ct. 2381; *Providence Hosp. of Toppenish*, 52 F.3d at 216. Without any evidence that Congress or the USDA only meant to debar raisin producers for willful or intentional misrepresentation because innocent misrepresentations are common in the raisin packing industry, Plaintiff's policy arguments fail.

Further, section 52.54(a) states that the listed acts or practices "may be deemed

sufficient cause for debarment." The use of the word "may" provides that the ALJ and JO are not required to debar an entity for any and all misrepresentations. The USDA has discretion to consider all factors when deciding whether to debar. Thus, Plaintiff's prediction—that most raisin packers will be debarred at some time because accidental misrepresentations always occur—is not accurate.

### b. Potato Sales Co. Inc. v. Department of Agriculture

In its reply brief, Plaintiff cites *Potato Sales Co. Inc. v. Department of Agriculture*, 92 F.3d 800, 803 (9th Cir.1996), for the proposition that a license revocation cannot occur if conduct was simply negligent and not deliberate. In this case, Potato Sales held a license under the Perishable Agricultural Commodities Act ("PACA"). *Id.* at 803. When Potato Sales misrepresented the origin of apples, the USDA instituted proceedings against Potato Sales and two other entities, seeking revocation of their licenses. *Id.* The applicable regulation was Title 7 C.F.R. § 46.45, which described violations as "serious," "very serious," or "flagrant," depending upon the circumstances of the misrepresentation. Where the violation is also willful, the revocation proceeding may be initiated without prior written warning and an opportunity to demonstrate or achieve compliance. 7 C.F.R. § 46.45(e)(5). The issue in Potato Sales was whether Potato Sales' conduct was flagrant and willful. *Potato Sales*, 92 F.3d at 804. The Ninth Circuit determined that the JO correctly found the conduct intentional, deliberate, and knowing and the JO correctly found the conduct willful.[6] *Id.* at 804–806. The court did note that if Potato Sales' conduct was not intentional or deliberate, it would not have been flagrant. *Id.* at 805.

Plaintiff cites to *Potato Sales* as authority for the proposition that intentional or willful conduct are required before a license revocation or debarment. However, *Potato Sales* concerned a different regulation, not section 52.54. The applicable provision, 7 C.F.R. § 46.45(a) reads:

(a) Violations. Violations are considered to be serious, very serious, or repeated and/or flagrant, depending upon the circumstances of the misrepresentation.

. . . .

(3) Flagrant violations. Include, but are not necessarily limited to, the following examples:

(i) Shipment or sale of a lot . . . after notification by official inspection that the inspected commodity fails to comply with any marking on the container . . . ;

(ii) To offer for resale or consignment, a lot . . . that has been officially inspected at destination and found to be misbranded without advising a prospective receiver that the lot is misbranded . . . ; or

(iii) **To withhold or fail to disclose known material facts with respect to a misrepresentation or misbranding.**

7 C.F.R. § 46.45(a) (emphasis added).[7]

The difference between section 52.54(a) and section 46.45(a) is that section

---

**6.** The court found Potato Sale's conduct was willful because the evidence showed it had been done intentionally or at least with a careless disregard of the statutory requirements. *Id.* at 806.

**7.** Title 7 C.F.R. § 46.45(a) reads in full:

52.54(a)(1) only requires a "misrepresentation." To constitute a flagrant violation under section 46.54(a)(3)(iii), the entity must withhold or fail to disclose known material facts with respect to a misrepresentation or misbranding. A misrepresentation itself does not violate section 46.54(a)(3). It is only misrepresenting a known material fact that requires the suspension of a license. Because *Potato Sales* concerns an entirely different regulation, it is not helpful to Plaintiff. Under the regulation at issue in *Potato Sales*, the plain

meaning of flagrant requires the entity to withhold or fail to disclose a known material fact with respect to a misrepresentation. At no place in section 46.45 is the world "misrepresentation" alone used to describe a violation. The word "misrepresentation" is modified by the rest of section 46.45(a)(3)(iii) in a way not found in section 52.54. The plain language of section 46.45 requires an intent to not disclose a misrepresentation. Thus, the fact the Ninth Circuit implied that section 46.45 requires more than innocent or unintentional con-

(a) Violations. Violations are considered to be serious, very serious, or repeated and/or flagrant, depending upon the circumstances of the misrepresentation.

(1) Serious violations. Include the following:

(i) Any lot of a perishable agricultural commodity shown by official inspection to contain scorable defects, off-size, off-count, exceeding the tolerance(s) in an amount up to and including double the tolerance provided in the applicable grades, standards or inspection procedures;

(ii) Any lot of perishable agricultural commodity officially certified as failing to meet the declared weight;

(iii) Any lot of a perishable agricultural commodity in which the State, country, or region of origin of the produce is misrepresented because the lot is made up of containers with various labels or markings that reflect more than one incorrect State, country or region of origin. Example: A lot with containers individually marked to show the origin as Idaho or Maine or Colorado when the produce was grown in Wisconsin; or

(iv) Any other physical act, verbal or written declaration, or record entry that misrepresents a lot of a perishable agricultural commodity to the same extent as the examples listed.

(2) Very serious violations. Include the following:

(i) Any lot of a perishable agricultural commodity shown by official inspection to contain scorable defects, off-size, off-count, in excess of double the tolerance(s) provided in the applicable grades, standards or inspection procedures;

(ii) Any lot of a perishable agricultural commodity packed in containers showing a single point of origin, which is other than that in which the produce was grown, such as containers marked "California" when the produce was grown in Arizona;

(iii) Any lot of a perishable agricultural commodity officially certified as having an average net weight more than four percent below the declared weight;

(iv) Multiple sales or shipments of a misrepresented perishable agricultural commodity within a seven day period that can be attributed to one cause; or

(v) Any other physical act, verbal or written declaration, or record entry that misrepresents a lot of a perishable agricultural commodity to the same extent as the examples listed.

(3) Flagrant violations. Include, but are not necessarily limited to, the following examples:

(i) Shipment or sale of a lot of a perishable agricultural commodity from shipping point after notification by official inspection that the inspected commodity fails to comply with any marking on the container without first correcting the misbranding;

(ii) To offer for resale or consignment, a lot of a perishable agricultural commodity that has been officially inspected at destination and found to be misbranded without advising a prospective receiver that the lot is misbranded and that the misbranding must be corrected before resale. When a resale or consignment is finalized, written notice must be given that the lot is misbranded and must be corrected before resale; or

(iii) To withhold or fail to disclose known material facts with respect to a misrepresentation or misbranding.

duct in *Potato Sales* is of no help to Plaintiff because section 52.54 and not section 46.45 is at issue.

### c. Similar Regulations

Finally, while not discussed by the parties, the other regulations in Title 7 provide some evidence as to the USDA's intent when section 52.54 was promulgated. Specifically, the court has reviewed the meaning given to the word "misrepresentation" in other places in Title 7.

The word "misrepresentation" is used over 100 times in Title 7. The word "misrepresentation" is often used alone. *See, e.g.,* 7 C.F.R. § 46.9; 7 C.F.R. § 401.6; 7 C.F.R § 762.103; 7 C.F.R § 1446.707. However, the word "misrepresentation" is also modified in many places. In Title 7 the word "misrepresentation" is modified by the term "knowing," requiring in some regulations that there be a "knowing misrepresentation." *See, e.g.,* 7 C.F.R. § 28.32. The word "misrepresentation" is modified in some regulations by the term "willful," requiring that there be a "willful misrepresentation" or that the entity has "willfully made any misrepresentation." *See, e.g.,* 7 C.F.R. § 51.46; 7 C.F.R. § 52.54; 7 C.F.R. § 54.1032; 7 C.F.R. § 57.46; 7 C.F.R. § 54.54; 7 C.F.R. § 979.80. The word "misrepresentation is modified by the term "deliberate," requiring in some regulations that there be a "deliberate misrepresentation," *See, e.g.,* 7 C.F.R. § 225.6. The word "misrepresentation" is also modified with the word "material," requiring that there be a "material misrepresentation." *See, e.g.,* 7 C.F.R. § 723.303; 7 C.F.R. § 1404.7.

The fact that the USDA chose to modify the word "misrepresentation" at other places in Title 7 implies that the USDA did not mean to modify the word "misrepresentation" in section 52.54(a)(1) with the words "willful," "deliberate," or "intentional." When the USDA wishes this type of intent to be read into the word "misrepresentation" in a regulation in Title 7, the USDA adds a modifier providing for this intent. A review of other provisions in Title 7 reveals that the USDA knows how to write a regulation to add a specific intent element to a party's misrepresentation. By choosing not to add a modifier to the word "misrepresentation" in section 52.54(a)(1), the USDA intended to not require that the misrepresentation be willful, deliberate, or intentional. As such, other provisions in Title 7 indicate that the USDA intended that the word "misrepresentation" in section 52.54(a)(1) would not be modified to require a specific intent to commit a misrepresentation. Thus, an alternative reading of section 52.54(a)(1) is not compelled by indicators of the agency's intent at the time the regulation was promulgated. *See Thomas Jefferson Univ.,* 512 U.S. at 512, 114 S.Ct. 2381.

### C. Sanction

■ At the hearing and in Defendant's improper sur-reply, Defendant argues that the USDA's choice of sanction should not be changed unless unwarranted in law or without justification in fact. There is no implication in the complaint, in any of Plaintiff's briefs, or at the hearing that one issue being raised by Plaintiff is that a different sanction should have been imposed. At the hearing, Plaintiff clarified that Plaintiff's sole contention is that it did not violate section 52.54 because the misrepresentation was not found to be willful or intentional. At the hearing and in Plaintiff's reply brief, Plaintiff did discuss the harshness of a one year debarment and asserts that the debarment will result

in Plaintiff having to close its business. However, Plaintiff has clarified that this argument is being made to show that a willful or intentional misrepresentation must be necessary because debarment is a harsh sanction and such a harsh sanction should be reserved for willful or intentional conduct. However, neither in Plaintiff's briefs nor at the hearing did Plaintiff request that the court provide a lesser punishment or sanction. Plaintiff's position is that it did not violate section 52.54. Thus, the court does not need to rule on whether a different sanction is appropriate because Plaintiff has never made such a request of this court.

## CONCLUSION AND ORDER

The sole issue before the court is whether section 52.54(a)(1)(ii) requires a misrepresentation to be willful or intentional. Each of the arguments that Plaintiff makes for finding the JO's interpretation of section 52.54(a)(1) incorrect and an intentional or willful misrepresentation is required fail for the reasons discussed above. The burden of proof in this action is on Plaintiff. Plaintiff has provided no persuasive argument that the JO's interpretation of section 52.54(a)(1) is incorrect and Plaintiff's interpretation is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation. Thus, summary judgment in favor of Defendant is appropriate, and summary judgment in favor of Plaintiff must be denied.

For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED;

2. Defendant's motion for summary judgment is GRANTED;

3. The Clerk of the Court is DIRECTED to enter judgment for Defendant; and

4. The Clerk of the Court is DIRECTED to close this action.