AMERICAN FRUIT PURVEYORS,
INC., Petitioner,

v.

UNITED STATES of America and Bob
Bergland, Secretary of Agriculture,
Respondent.

No. 79–3815

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1980.

Richard B. Marx, Miami, Fla., for petitioner.

Raymond W. Fullerton, Director, U. S. Dept. of Agriculture, Washington, D. C., for respondent.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

The present case is on appeal from a decision of the Secretary of the United States Department of Agriculture, through his Judicial Officer, suspending the license of American Fruit Purveyors [AFP]. AFP is a supplier of fresh and frozen fruits and vegetables to hotels, restaurants and steamship lines. The company was licensed in 1958 and has received renewal of that license annually. In 1969, AFP purchased and accepted 17 lots of vegetables, which are considered perishable agricultural commodities, from five sellers and failed to make full payment promptly. On October 29, 1971, following the filing of a complaint by the Department of Agriculture against AFP, the Judicial Officer ordered that AFP's license be suspended for fourteen days. The Judicial Officer suspended this disciplinary action, stating that the penalty would not become effective unless AFP was found to have, within a four-year period,

knowingly failed to pay for produce within the regulation guidelines' ten days period following receipt. The Judicial Officer also ruled that AFP could avoid the ten–day payment rule only if it entered into an express written agreement which stated a definite time period within which to pay and if AFP paid within such an agreed time. The four–year period began to run on February 7, 1972.

During the 1974 crop year, AFP purchased and accepted six shipments of potatoes from Sunny Farms, Inc., located in Edison, California. All orders were made orally, and no written confirmation of such transactions was made. In its usual course of business, Sunny Farms expects payment within ten days of receipt by the purchaser and would cease shipments if payment was not received within two weeks. Sunny Farms did receive a prompt payment for one shipment, but the remaining payments were not forthcoming. In order to liquidate obligations remaining on AFP's account, Sunny Farms agreed to accept postdated checks. A number of these checks were returned due to insufficient funds. In 1975, Sunny Farms filed a complaint with the Secretary of Agriculture seeking reparations. Pursuant to an order by the Judicial Officer, final payment was made by AFP in 1976.

During the same crop–year of 1974, AFP also purchased and accepted a number of shipments of fruit and vegetables from Vic Mahns, Inc., located in Pompano Beach, Florida. No written agreement of these transactions was ever made. The original terms of the oral agreement required payment within one week of receipt, but this was later altered to a three week period. Harry Sturm, president of the corporation which owns AFP, disputed this arrangement, contending that the agreement was that AFP would pay when it was able. Again, AFP failed to pay promptly and Vic Mahns seized its shipments. Vic Mahns also agreed to accept postdated checks to liquidate AFP's account. Some of these checks were returned due to insufficient funds. Vic Mahns filed a complaint seeking reparations, and following another order of

the Judicial Officer, Vic Mahns and AFP entered into a settlement agreement.

A complaint was then filed by the director of the Fruit and Vegetable Division, Agricultural Marketing Service of the USDA against AFP seeking disciplinary action under the Perishable Agricultural Commodities Act [PACA], 7 U.S.C. §§ 499a–499s, for failure to make payments promptly on twenty lots of perishable agricultural commodities. Following an evidentiary hearing, the Administrative Law Judge [ALJ] found that AFP had not made payments in ten days as required by § 499b, that it had not entered into an express agreement for a different pay period and AFP's actions violated the order of the Judicial Officer of October 29, 1971. Based upon his findings of fact, the ALJ reinstated the fourteen day suspension issued on October 29, 1971. Although the USDA recommended an additional penalty of ninety days suspension for the 1974 violations, the ALJ imposed an additional suspension of seven days to run consecutively with the fourteen days.

Both AFP and the Department of Agriculture appealed this decision to the Judicial Officer. The Judicial Officer denied AFP's request for oral argument on the ground that no novel or complex issues were raised, the case was thoroughly briefed and oral argument would serve no useful purpose. The Judicial Officer affirmed the ALJ's decision except that portion regarding the imposition of the seven day additional suspension. The Judicial Officer, finding "a callous disregard for the requirements of the Act and the prior probationary order," increased the seven day suspension to thirty days to run consecutively, making it a total of forty–four days suspended.

A stay was subsequently entered, pending an appeal to this court. Following the grant of the stay, the Judicial Officer denied a Petition to Reconsider filed by AFP. The stay order remained in effect. AFP now raises four issues on appeal: 1) AFP did not knowingly and willfully fail to make

prompt payments for twenty lots of perishable agricultural commodities; 2) AFP did satisfy the requirements of the 1971 order regarding written confirmation; 3) the Secretary of Agriculture gave no notice to AFP of the 1974 violations and found AFP guilty of a willful violation without giving it an opportunity to comply; and 4) the suspension in this case is arbitrary and capricious.

■ In reviewing the findings and order of the Judicial Officer of the Department of Agriculture, an appellate court may not substitute its judgment for that of the Judicial Officer, *Lewis v. Butz*, 512 F.2d 681, 683 (8th Cir. 1975), and his decision may only be overturned if it is unwarranted in law or without justification in fact. *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973); *Noell v. Bensinger*, 586 F.2d 554, 558 (5th Cir. 1978).

7 U.S.C. § 499b(4) provides in part that it shall be unlawful in any transaction in interstate commerce "for any commission merchant, dealer, or broker . . . to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in [perishable agricultural commodities] to the person with whom such transaction is had. . . ." The term "full payment promptly" means "payment for produce purchased by a buyer, within ten days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5). The ten day rule is inapplicable if the parties by express agreement at the time of the creation of the contract provide for a different time of payment. 7 C.F.R. § 46.2(aa)(9).

■ Contrary to AFP's contention, it did not make prompt payment to Sunny Farms or Vic Mahns, Inc. AFP concedes that there was never an express written agreement with either company. The testimony from the depositions and the hearing clearly indicates that neither Vic Mahns nor Sunny Farms held their buyers to the strict ten day rule. Although both companies preferred to follow the ten day rule, they would accept payment within relatively short times following acceptance, two

weeks for Sunny Farms and three weeks for Vic Mahns, Inc. In Vic Mahns, Inc.'s case, AFP and Vic Mahns specifically agreed to a three–week time period. Nonetheless, AFP failed to pay within those periods and did not completely satisfy its account until after ordered to do so by the Secretary of Agriculture through the reparation proceedings.

Likewise, Sunny Farms made it clear that it desired payment within two weeks, which payments were never completely satisfied until after the Judicial Officer's decision in the reparation proceedings. The acceptance of postdated checks by Vic Mahns and Sunny Farms in an effort to liquidate their accounts can, by no stretch of the imagination, be considered prompt payment. Neither Vic Mahns nor Sunny Farms agreed to accept the postdated checks as part of the original payment agreement. Even if the acceptance of postdated checks could be considered as prompt payment, the return of a number of those postdated checks for insufficient funds would negate any claim of prompt payment.

■ The Judicial Officer was correct in finding that there were twenty separate violations, although AFP contends there were only two continuous transactions, one with Vic Mahns and one with Sunny Farms. Each lot was clearly a separate transaction, which is corroborated by one of Vic Mahns' sellers who stated that the sales involved were each individual orders.

■ Additionally, AFP violated the 1971 order during the four–year period of probation. That order required any prompt payment beyond ten days to be confirmed by an express written memorandum. The order also required that AFP make payment within that agreed time. AFP did neither, and this court finds AFP's argument that the acceptance by Sunny Farms and Vic Mahns of postdated checks satisfied the requirements of the 1971 order to be wholly without merit.

**374**

AFP also contends that the Judicial Officer's decision is unwarranted in law and without justification in fact since the Department of Agriculture failed to follow the mandates of 5 U.S.C. § 558(c). Section 558(c) provides that suspension of a license is lawful only if the licensee is given prior notice and an opportunity to demonstrate or achieve compliance, except in cases of willfulness. Thus, no notice is necessary if the suspension proceeding is based on willfulness. Under PACA, an action is willful if a prohibited act is done intentionally, irrespective of evil intent, or done with careless disregard of statutory requirements. *Haltmier v. Commodity Futures Trading Commission*, 554 F.2d 556, 562 (2d Cir. 1977); *George Steinberg & Son, Inc. v. Butz*, 491 F.2d 988, 994 (2d Cir. 1974), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 55 (1974). In light of the 1971 order, there is no possibility that AFP did not know that failure to pay promptly was a violation of the regulations and the statute and that failure to obtain an express written agreement was a knowing violation of both the regulations and the 1971 order. No notice to AFP was required in this case, and the finding of willfulness was correct.

AFP also contends that the sanction imposed is arbitrary and capricious. AFP also claims that the sanction amounts to cruel and unusual punishment under the Eighth Amendment. AFP contends that the USDA has practiced selective enforcement against it and that the Judicial Officer has arbitrary and unbridled discretion in this area. The choice of sanctions imposed by the Secretary of Agriculture, through his Judicial Officer, may not be overturned in the absence of a patent abuse of discretion. *Moog Industries, Inc. v. Federal Trade Commission*, 355 U.S. 411, 414, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1958) (per curiam); *Haltmier v. Commodity Futures Trading Commission*, 554 F.2d at 563. 7 U.S.C. § 499h(a) allows the Secretary to suspend a license for a period not to exceed ninety days for each violation. It has been held that suspensions may be imposed even without a finding of intentional or fraudulent conduct. *See Maine Potato Growers, Inc. v. Butz*, 540 F.2d 518, 523 (1st Cir. 1976).

In the present case, AFP committed flagrant intentional violations of the Act, the underlying regulations and the 1971 order. Although the suspension of a license is a harsh sanction, the Judicial Officer was completely within his power and discretion in imposing a suspension of forty-four days. Although the Judicial Officer possesses a great deal of discretion, this Court does not find it to be an unbridled or unreasonable amount of discretion. The Supreme Court has held that uniformity of sanctions for similar violations is not mandated by the Act. *Butz v. Glover Livestock Commission Co.*, 411 U.S. at 186, 93 S.Ct. at 1458. Merely because a sanction in one case is more severe than that imposed in a similar case does not render the sanction illegal. *Id.* at 187, 93 S.Ct. 1458. This Court perceives no bias on the part of the ALJ or the Judicial Officer in rendering their decisions. This Court also can find no evidence of selective enforcement and considers AFP's claim of cruel and unusual punishment to be inapplicable to the present case and totally without merit.

PETITION DENIED; ORDER ENFORCED.