UNITED STATES COURT OxF APPEALS
For the Fifth Circuit

_____

No. 98-60187

_____

ALLRED'S PRODUCE,

Petitioner,

VERSUS

UNITED STATES DEPARTMENT OF AGRICULTURE,

Respondent.

_____

Petition for Review from the
United States Department of Agriculture

_____
July 1, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner Allred's Produce ("Allred's") appeals a final order
of the Secretary of Agriculture revoking its license under the
Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a-
499s, for willful, repeated, and flagrant failure to make full
payment promptly to various sellers of perishable agricultural
commodities. Allred's contends that the Secretary's findings and
sanction were arbitrary and capricious, that Allred's was singled
out for selective enforcement, and that the Secretary failed to
observe various procedural requirements under the PACA. For reasons
that follow, the Secretary's order is affirmed.

I.

Before proceeding to the specific facts and issues of this

case, it is useful to review the applicable statutory and regulatory framework. Congress enacted the PACA in 1930 "for the purpose of regulating the interstate business of shipping and handling perishable agricultural commodities such as fresh fruit and vegetables." George Steinberg and Son, Inc. v. Butz, 491 F.2d 988 (2nd Cir. 1974). It was designed "to provide a measure of control over a branch of industry which is almost exclusively in interstate commerce, is highly competitive, and presents many opportunities for sharp practice and irresponsible business conduct." Zwick v. Freeman, 373 F.2d 110, 116 (2nd Cir. 1967). To that end, the PACA establishes a strict licensing system with often severe sanctions for violations of its requirements.

Under the PACA, every dealer of perishable agricultural commodities is required to be licensed by the Secretary of Agriculture. 7 U.S.C. § 499c(a). These dealers are subject to a number of statutory requirements, the most basic of which is that they make "full payment promptly" for all purchases of perishable agricultural commodities. 7 U.S.C. § 499b(4). The Secretary has defined "full payment promptly" to mean "[p]ayment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted." 7 C.F.R. § 46.2(aa)(5). Parties may agree to a different time limit, provided that they reduce such an agreement to writing before entering into the transaction and maintain a copy of the agreement in their records. 7 C.F.R. § 46.2(aa)(11). The party claiming the existence of such an agreement has the burden of proof. Id.

The PACA authorizes stiff penalties for violation of the

2

prompt payment requirement. Upon determining that any dealer has violated any of the PACA's statutory requirements, the Secretary may publish the facts and circumstances of the violation and suspend the license of the offender for up to 90 days. 7 U.S.C. § 499h(a). Moreover, if the violation is flagrant or repeated, the Secretary may revoke the license of the offender. Id. Alternatively, under the 1995 amendments to the PACA, the Secretary may impose a civil penalty not to exceed $2,000 per violation or $2,000 each day a violation continues. 7 U.S.C. § 499h(e).

## II.

Allred's is a partnership formed in 1966, composed of Raymond M. Allred and his son, Ronald D. Allred. Its sole business is the purchase and sale of produce. Allred's has been licensed under the PACA continuously, without suspension or revocation, since 1977.

The PACA Branch of the United States Department of Agriculture ("PACA Branch") conducted three investigations of Allred's between 1994 and 1997. The first investigation was in 1994, and resulted in no formal complaint against Allred's. The second investigation, a compliance review, was in February 1996. It revealed that, during the period from May 1993 through February 1996, Allred's failed to make full payment promptly to 19 sellers for 86 lots of perishable agricultural commodities in the total amount of $336,153.40. Based on these findings, PACA Branch initiated a complaint against Allred's in July 1996. The third investigation, an audit to ascertain whether Allred's had brought its operation into compliance with the PACA prior to hearing, was in May 1997. The audit revealed that $149,329.66 of the original $336,153.40

3

remained unpaid. The audit further found that the firm's total interstate and foreign commerce past due debt had risen to $463,328.61, owed to 25 sellers for 125 lots of perishable agricultural commodities.

A hearing was conducted before an Administrative Law Judge ("ALJ") in June 1997. Additional testimony was taken during a telephone hearing in August 1997. The ALJ issued his decision from the bench at the close of the hearing. He found that Allred's Produce had failed to make full payment promptly to 19 sellers for 86 lots of perishable agricultural commodities in the amount of $336,153.40 during the period from May 1993 through February 1996. He further found that these violations were willful, repeated, and flagrant. Based on these findings, the ALJ revoked the firm's PACA license.

Allred's filed an administrative appeal of the ALJ's decision and order in September 1997. The Judicial Officer ("JO"), acting for the Secretary, issued a final decision and order in December 1997 adopting the ALJ's decision and adding several more conclusions. Allred's sought reconsideration, which the JO denied in February 1998. The JO did, however, stay his order pending the outcome of judicial review. This appeal followed.

III.

Judicial review of the decision of an administrative agency is narrow. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971). The decision will be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(A). An appellate court may

4

not substitute its own judgment for that of the Secretary. American Fruit Purveyors, Inc. v. United States, 630 F.2d 370, 373 (5th Cir. 1980). The Secretary's decision may only be overturned if it is unwarranted in law or without justification in fact. Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185-86 (1973). Likewise, judicial review of a sanction imposed under the PACA is extremely limited. Wayne Cusimano, Inc. v. Block, 692 F.2d 1025, 1030 (5th Cir. 1982). "The choice of sanctions imposed by the Secretary of Agriculture, through his Judicial Officer, may not be overturned in the absence of a patent abuse of discretion." American Fruit Purveyors, 630 F.2d at 374.

Allred's challenges the Secretary's final order on the following six grounds: (1) the sanction awarded was arbitrary and capricious; (2) the findings and conclusions of the Secretary were arbitrary and capricious; (3) Allred's was singled out for selective enforcement; (4) the allowance of the introduction of new claims at the agency hearing was in excess of the agency's authority and without observance of procedure; (5) the revocation of Allred's license was without observance of procedure because the Secretary failed to establish that a written notice of a violation of the PACA had been received by the Secretary prior to commencement of PACA Branch's investigation; and (6) the allowance and consideration of certain questionable and unreliable evidence and testimony at the hearing was without observance of procedure. We find these arguments unpersuasive.

A.

Allred's first argues that the Secretary's decision to impose

5

the sanction of license revocation was arbitrary and capricious under the attendant circumstances of the case and under the custom and practice of the industry. According to Allred's, no supplier of perishable agricultural commodities realistically expects to be paid according to terms, and it is not uncommon for suppliers to extend payment terms during and after transacting business to accommodate the buyer. Thus, Allred's states, the 10-day time limit established by the regulations is outdated and does not reflect the real world. Revocation of Allred's license would therefore have no deterrent effect on other buyers of perishable agricultural commodities. Allred's also describes as abusive the Secretary's failure to consider outside factors militating against the imposition of sanctions, such as Allred's efforts to pay its suppliers and the fact that no supplier of Allred's desired Allred's to be forced out of business, and the Secretary's failure to consider imposition of monetary penalties as an alternative sanction. Finally, Allred's contends that the Secretary abused his discretion by failing to consider whether the purpose behind the sanction--deterrence of violative conduct and reducing the risk of loss to suppliers--would be accomplished through license revocation.

These arguments are unavailing. As noted above, we will not overturn the Secretary's choice of sanction absent a patent abuse of discretion. American Fruit Purveyors, 630 F.2d at 374. Our only consideration, therefore, is "whether, under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in [his] choice of remedy.'" Glover Livestock, 411 U.S. at 189

6

(quoting Jacob Siegel Co. v. FTC, 327 U.S. 608, 612 (1946)). We find that the Secretary's judgment in this case was both warranted in law and justified in fact. Where a violation of the PACA is "flagrant or repeated," the PACA by its own terms authorizes revocation of the violator's license. 7 U.S.C. § 499h(a). Here, the Secretary found that Allred's violations of the PACA were both flagrant and repeated. For reasons discussed below, we agree. Thus, the revocation of Allred's license was well within the Secretary's authority. We will not embark on a legislative analysis of the PACA's relevance to modern industry practice, nor will we reexamine the aggravating and mitigating evidence to determine whether we would have arrived at some lesser sanction. Those are not appropriate functions for an appellate court sitting in review of a final administrative order. It is enough that the sanction imposed by the Secretary was allowable under the PACA and the facts of this case.

B.

Allred's next challenges as arbitrary and capricious the Secretary's finding that its failures to pay were willful, repeated, and flagrant. Allred's points out that, at the time of the hearing, it had paid over 50 percent of the past due accounts that were the subject of the Secretary's complaint, and was in the process of paying all outstanding accounts under terms acceptable to its suppliers. According to Allred's, no suppliers were complaining about mistreatment or past due payments, and many suppliers were continuing to supply Allred's even though Allred's owed them money. Under these circumstances, Allred's contends, it

7

cannot be said that the failures to pay were willful, repeated, or flagrant.

We disagree. Under the regulations, "full payment promptly" means payment within 10 days of the date on which the produce is accepted, or payment within the time specified in writing by prior agreement of the parties. 7 C.F.R. § 46.2(aa). Allred's does not deny that it failed on numerous occasions to make full payment promptly under this definition. Nor does Allred's dispute that, during a nearly three-year period from May 1993 through February 1996, it failed to make full payment promptly on 86 lots of perishable agricultural commodities in the total amount of $336,153.40. In light of these undisputed facts, we can find no error, and certainly no abuse of discretion, in the Secretary's finding that the violations were willful, repeated, and flagrant.

Violations are "repeated" under the PACA if they are not done simultaneously. Reese Sales Company v. Hardin, 458 F.2d 183, 187 (9th Cir. 1972); Zwick v. Freeman, 373 F.2d 110, 115 (2nd Cir. 1967). Here, the 86 violations were spread out over a period of two years and ten months. Violations are "willful" under the PACA "if the prohibited act is done intentionally, irrespective of evil intent, or done with careless disregard of statutory authority." Finer Foods Sales Co., Inc. v. Block, 708 F.2d 774, 778 (D.C. Cir. 1983). Similarly, whether violations are "flagrant" under the PACA is a function of the number of violations, the amount of money involved, and the time period during which the violations occurred. See Reese, 458 F.2d at 187; Zwick, 373 F.2d at 115. Here, Allred's violated the PACA 86 times over nearly three years for an amount

8

totaling over $300,000. To describe these violations as anything other than "willful" and "flagrant" would be to render those terms meaningless. The Second Circuit expressed this point best in Zwick: "[I]t is inconceivable that petitioners were unaware of their financial condition and unaware that every additional transaction they entered into was likely to result in another violation of [the PACA]. It would be hard to imagine clearer examples of 'flagrant' violations of the statute than were exemplified by petitioners' conduct." Zwick, 373 F.2d at 115.

C.

Allred's argues next that it was singled out for selective enforcement under the PACA's disciplinary provisions. Allred's asserts that most complaints and disciplinary actions under the PACA are maintained against small to mid-sized buyers rather than institutional buyers. Thus, Allred's asserts, the brunt of enforcement falls on the shoulders of the small to mid-sized buyer.

This argument fails on its face. Even taking all of Allred's allegations as true, we can find no legal rationale for vacating the Secretary's order. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." Oyler v. Boles, 368 U.S. 448, 456 (1962). Rather, it must be shown that the selective enforcement "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Id. Allred's cites no authority, and we can find none, for the proposition that an otherwise culpable PACA violator is shielded from the consequences of his actions simply because the PACA is applied

unevenly to non-institutional buyers. We agree with the Secretary that "[the] PACA does not need to be enforced everywhere to be enforced somewhere; and agency officials have broad discretion in deciding against whom to institute disciplinary proceedings."

D.

Allred's concludes with three challenges to the procedural validity of the ALJ's hearing. Each of these challenges lacks merit.

First, Allred's contends that the ALJ impermissibly allowed the introduction of "new claims" at the hearing. The "new claims" to which Allred's refers are the new violations uncovered by PACA Branch in its May 1997 audit of Allred's. Allred's argues that the admission of these new claims at the hearing without amendment of the complaint forced Allred's to respond to allegations without due process of law and substantially and irreparably injured its ability to present evidence to respond to the new claims.

We disagree. The final order of the Secretary makes clear that Allred's was sanctioned solely for the 86 violations alleged in the Secretary's original complaint, not for the additional violations uncovered in the May 1997 audit. The "new claims" evidence was actually nothing more than evidence of the current indebtedness of Allred's, which was relevant to the question of relief from license revocation. Under Department of Agriculture policy, a dealer who otherwise faces license revocation may escape that sanction if it can show "(i) that it has made full payment of the transactions alleged in the Complaint, and (ii) [that] such payment was not made by 'robbing Peter to pay Paul." In re S W F Produce Co., 54 Agric.

10

Dec. 693, 700 (1995) (citing In re The Caito Produce Co., 48 Agric. Dec. 602, 629-42 (1989)). The May 1997 audit revealed that Allred's did not qualify for such a mitigation of sanction, and the so-called "new claims" evidence was admitted solely on that issue. Thus, the ALJ did not improperly admit evidence of new claims. Rather, he properly considered relevant evidence that Allred's did not qualify for relief from license revocation on the existing claims. The sanction itself was based solely on the 86 violations alleged in the original complaint.

Second, Allred's argues that the revocation of its license was without observance of procedure as required by law because there was no evidence that the Secretary's investigation of Allred's was based on receipt by the Secretary of written notification of a violation of the PACA. Allred's notes that 7 U.S.C. § 499f(b) requires such written notification prior to commencement of an official investigation, and asserts that the Secretary failed to present evidence of such notification to justify the February 1996 compliance review that resulted in the complaint against Allred's.

This argument lacks basis both in law and in fact. The written notification requirement was added as part of the 1995 amendments to the PACA, more than a year after the initial investigation of Allred's began in 1994. The Secretary found, based on substantial record evidence, that the 1996 compliance review was a follow-up to the original 1994 investigation. We agree. As such, since the investigation began prior to the enactment of the written notification requirement, the requirement could not act as a bar to the Secretary's actions in this case. Moreover, the 1994

investigation was triggered by trust notices and a reparation complaint filed against Allred's. Thus, even if the written notification requirement did apply, these written complaints were sufficient to satisfy it.

Finally, Allred's challenges the ALJ's decision to admit the testimony of Joan Colson, the Secretary's representative, to make a sanction recommendation. Allred's contends that her testimony was entirely unsupported, undocumented, unsubstantiated, and unreliable, and that the admission of it was therefore without observance of procedure as required by law. Once again, we disagree. We note first that there is no reference to Ms. Colson's testimony in the ALJ's order, and that there is no evidence that either the ALJ or the Secretary relied on her testimony in imposing the sanction of license revocation. Additionally, we agree with the Secretary that Ms. Colson was a reliable witness with respect to the sanction recommendation, and that the sanction recommended and imposed was in accordance with the PACA. In sum, we find that the ALJ and the Secretary likely did not rely on Ms. Colson's testimony in imposing the sanction of license revocation, but even if they did, that reliance was not erroneous, because the recommendation was consistent with the PACA and the regulations.

IV.

We find that the Secretary's decision to revoke Allred's PACA license was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Therefore, the Secretary's Decision and Order is affirmed.

AFFIRMED.

12