*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0319P (6th Cir.)
File Name: 03a0319p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

H.C. MACCLAREN, INC.,
        *Petitioner,*

    *v.*

UNITED STATES DEPARTMENT
OF AGRICULTURE,
        *Respondent.*

No. 02-3006

On Appeal from an Order of the Secretary,
United States Department of Agriculture.
No. D-99-0012.

Argued: June 11, 2003

Decided and Filed: September 4, 2003

Before: MOORE and GIBBONS, Circuit Judges;
SCHWARZER, Senior District Judge.*

_____

    *The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

_____

## COUNSEL

**ARGUED:** Stephen P. McCarron, McCARRON & DIESS, Washington, D.C., for Petitioner. Stephen M. Reilly, OFFICE OF GENERAL COUNSEL, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Respondent. **ON BRIEF:** Stephen P. McCarron, McCARRON & DIESS, Washington, D.C., for Petitioner. Stephen M. Reilly, OFFICE OF GENERAL COUNSEL, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Respondent.

_____

## OPINION

_____

    JULIA SMITH GIBBONS, Circuit Judge. Petitioner H.C. MacClaren, Inc. (MacClaren), a wholesale produce broker, appeals a final order of the Secretary of Agriculture revoking its license pursuant to the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a-499s. The Secretary determined that the sanction of license revocation was appropriate after concluding that MacClaren had committed sixty-one violations of PACA. Specifically, MacClaren employees admitted to altering fifty-three United States Department of Agriculture (USDA or "the agency") inspection certificates and issuing eight false accounts of sale for a fraudulent purpose. MacClaren contends that in imposing the sanction of license revocation, the Secretary erred in failing to consider the remedial purpose of PACA and all relevant circumstances and imposed a sanction that is without justification in fact. For the reasons set forth below, we affirm the decision of the Secretary.

## I.

MacClaren began doing business in the 1920s and was issued a PACA license in 1974. Since 1974, MacClaren's license has been renewed annually. MacClaren operates out of Detroit, Michigan, and is owned and managed by Gregory MacClaren, president, director and fifty-one percent stockholder, and Darrell Moccia, vice-president, director, and forty-nine percent stockholder. In addition to Gregory MacClaren and Darrell Moccia, during the relevant time period MacClaren employed four salespersons, Norman Olds, Alan Johnston, Frederick Gottlob and Daniel Schmidlin, who were paid on commission. All six individuals purchased fruits and vegetables (perishable commodities) from shippers throughout the country and resold the produce to local jobbers and wholesalers. They worked in the same area with raised dividers separating their desks and together handled about 400 transactions per month.

Prior to the violations at issue, MacClaren had no record of violations of PACA. During 1994 through 1996, however, three MacClaren employees committed sixty-one violations of PACA. Olds, Johnston and Gottlob admitted to altering fifty-three inspection certificates resulting in underpayments totaling $130,903.00 to twenty-two suppliers. In addition, Olds and Gottlob admitted to issuing eight false accounts of sale to seven suppliers resulting in underpayments of $6,599.15.

The admissions by MacClaren employees resulted from the investigation of another company suspected of altering inspection certificates. In December 1996, USDA investigators visited MacClaren to examine MacClaren's file relating to a transaction with the company under investigation. Upon examining the file, the investigators discovered two copies of the same USDA inspection certificate containing conflicting entries. Neither Gregory MacClaren nor Darrell Moccia could explain the discrepancy.

The investigators then reviewed thirty-six files and found discrepancies in eleven of the files handled by Olds, Gottlob and Johnston.

Gregory MacClaren and Darrell Moccia denied knowledge of the alterations and told investigators that they wanted to cooperate and investigate the matter internally. They initiated an internal review and had their employees review all past files for altered inspection certificates. The internal investigation uncovered numerous additional altered inspection certificates which Gregory MacClaren and Darrell Moccia turned over to investigators. Olds, Gottlob and Johnston voluntarily gave statements to the investigators admitting that they had altered USDA inspection certificates and denying that Gregory MacClaren or Darrell Moccia were aware of their actions. Gottlob also admitted to issuing seven false accounts of sale, and Olds admitted to issuing one such false account.

Gregory MacClaren personally contacted the suppliers affected by the altered inspection certificates and false accounts to express MacClaren's intent to make restitution. According to MacClaren, the company returned almost one hundred percent of the amounts it underpaid shippers as a result of the alterations and false accountings.[1]

Despite their admissions of improper conduct, MacClaren continued to employ Olds and Gottlob on the condition that they reimburse MacClaren for the restitution that it intended to pay the shippers. In addition, Olds and Gottlob were directed to call each shipper affected by the altered inspection certificates, explain their actions and advise the shipper that MacClaren intended to make restitution for any losses the shipper suffered. Olds continued working for MacClaren, and

---

[1] The USDA concedes that MacClaren repaid "most but not all of the underpayments."

through paycheck deductions he reimbursed MacClaren for the restitution on the inspection certificates he altered. Gottlob, however, only continued working for MacClaren for about a month and a half until he was terminated for poor work performance. Gottlob did not repay MacClaren any of the restitution amount.

On June 17, 1999, the USDA issued a complaint charging MacClaren with violating PACA by altering fifty-three USDA inspection certificates and submitting false accounts to seven suppliers. The Complaint requested that MacClaren's license be revoked due to its "willful, flagrant and repeated violations" of PACA. On September 20 and 21, 2000, Administrative Law Judge (ALJ) James W. Hunt conducted a hearing in Detroit, Michigan. In his decision and order finding that MacClaren violated PACA as alleged in the complaint, the ALJ noted that MacClaren "did not deny that 53 USDA inspection certificates had been altered." He held that because "these unlawful acts were committed by [MacClaren's] salesmen in the course of their employment, they are deemed to be the acts of [MacClaren]." In deciding the appropriate sanction for the violations, the ALJ found that it had not been shown that MacClaren "was irresponsible or unscrupulous and no evidence was provided to show that license revocation or suspension would have a greater beneficial effect on the industry than a monetary fine." According to the ALJ, MacClaren "acted responsibly when it became aware of the fraudulent practices of its salesmen" and "took prompt measures to provide restitution to the shippers." Moreover, the ALJ recognized that neither Olds or Gottlob was criminally prosecuted for altering federal inspections under 7 U.S.C. § 499n(b).[2] Therefore, the ALJ imposed a civil penalty of $50,000.

The agency appealed the ALJ's decision to the Judicial Officer, acting for the Secretary of Agriculture, on May 23, 2001.[3] Among other things, the agency argued that the ALJ erred in failing to find MacClaren's violations willful and therefore further erred by imposing a sanction of a civil monetary penalty rather than license revocation. On November 8, 2001, without conducting an additional hearing, Judicial Officer William G. Jenson issued a decision and order in which he agreed with the majority of the ALJ's findings. The decision, however, differed from the opinion of the ALJ in two significant areas. First, in the findings of fact, the Judicial Officer concluded that Gregory MacClaren and Darrell Moccia, MacClaren's owners, "did not know, but should have known, during the period of June 1994 through November 1996, that the United States Department of Agriculture inspection certificates . . . were altered and that the false accounts of sales . . . were made." In addition, the Judicial Officer disagreed with the sanction of a civil monetary penalty and instead imposed the sanction of license revocation. MacClaren filed its petition for review in this court on January 2, 2002, which was within sixty days of issuance of the final agency order as required under 28 U.S.C. § 2344.

## II.

In 1930, Congress enacted PACA "for the purpose of regulating the interstate business of shipping and handling perishable agricultural commodities such as fresh fruit and vegetables." *Allred's Produce v. United States Dep't of Agric.*, 178 F.3d 743, 745 (5th Cir. 1999) (quoting *George Steinberg and Son, Inc. v. Butz*, 491 F.2d 988 (2d Cir. 1974)). PACA was "designed to ensure that commerce in agricultural

---

[2]Gottlob obtained immunity from criminal prosecution in return for his testimony at the USDA hearing. Olds testified at the hearing, but did not receive immunity.

[3]The Secretary of Agriculture has delegated authority to the Judicial Officer to act as final deciding officer in the USDA's adjudicatory proceedings subject to 5 U.S.C. §§ 556 & 557. 7 C.F.R. § 2.35.

commodities is conducted in an atmosphere of financial responsibility." *Kanowitz Fruit and Produce Co, Inc., v. United States Dep't of Agric.*, No. 97-4224, 1998 WL 863340, at *1 (2d Cir. Oct. 29, 1998). It provides "a measure of control over a branch of industry which is almost exclusively in interstate commerce, is highly competitive, and presents many opportunities for sharp practice and irresponsible business conduct." *Allred's Produce*, 178 F.3d at 745 (quoting *Zwick v. Freeman*, 373 F.2d 110, 116 (2d Cir. 1967)). To achieve this control, PACA establishes a strict licensing system and subjects all dealers of perishable agricultural commodities to severe sanctions for violations of PACA's requirements. *Id.*; 7 U.S.C. §§ 499c(a) & 499h. The USDA is designated with authority to administer and enforce PACA.

Under PACA, dealers are subject to a number of statutory requirements including making full payment promptly for all purchases of perishable agricultural commodities. 7 U.S.C. § 499b(4). In addition, it is unlawful for any dealer "to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity" and "to fail or refuse [to] truly and correctly . . . account for such transactions." *Id.* Violations of PACA's requirements may result in sanctions. The Secretary may publish the facts and circumstances of violations and suspend the license of the violator for up to ninety days, or, if a violation is flagrant or repeated, the Secretary may revoke the violator's license. 7 U.S.C. § 499h(a). In 1995, Congress amended PACA to provide for the alternative sanction of a civil monetary penalty not to exceed $2,000 per violation or $2,000 each day a violation continues. 7 U.S.C. § 499h(e).

The USDA set forth the standard governing the decision to impose a particular sanction in *In re S.S. Farms Linn County, Inc.*:

[R]eliance will no longer be placed on the "severe" sanction policy set forth in many prior decisions. Rather, the sanction in each case will be determined by examining the nature of the violations in relation to the remedial purposes of the regulatory statute involved, along with all relevant circumstances, always giving appropriate weight to the recommendations of the administrative officials charged with the responsibility for achieving the congressional purpose.

50 Agric. Dec. 476, 497 (1991) (citations omitted), *aff'd*, 1993 WL 128889 (9th Cir. 1993). Accordingly, the Secretary must consider all relevant circumstances, including both mitigating and aggravating circumstances, when selecting the appropriate sanction. *See Tambone v. United States Dep't of Agric.*, 50 F.3d 52, 55 (D.C. Cir. 1995).

MacClaren first contends that the Secretary, acting through the Judicial Officer, failed to apply the proper USDA standard for determining sanctions in deciding to revoke MacClaren's license. Whether the Secretary applied the correct standard is a question of law subject to *de novo* review. *Potato Sales Co., Inc. v. Dep't of Agric.*, 92 F.3d 800, 803 (9th Cir. 1996) ("[a]n agency's conclusions of law are subject to *de novo* review"). Our review of the Secretary's decision indicates that the Secretary applied the correct legal standard for determining the appropriate sanction as set forth in *S.S. Farms Linn County, Inc.*

MacClaren next claims that the Secretary applied the legal standard incorrectly and therefore imposed an improper sanction because the Secretary did not examine the nature of the violations in relation to the remedial purpose of PACA and did not consider all relevant circumstances. Our review of an administrative agency decision is narrow, and we will uphold the decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Allred's Produce*, 178 F.3d at 746 (quoting 5 U.S.C.

§ 706(2)(A)). Specifically, we review whether the Secretary misapplied the sanction standard for an abuse of discretion, and we may not overturn the Secretary's choice of sanction unless it is unwarranted in law or without justification in fact. *See Havana Potatoes of New York Corp. v. United States Dep't of Agric.*, 136 F.3d 89, 91, 93 (2d Cir. 1997) (considering under an abuse of discretion standard whether the Secretary's choice of sanction was based on an erroneous policy regarding sanctions and whether the Judicial Officer misapplied the USDA sanction standard, and noting that the Secretary's choice of sanction is not to be overturned unless it is unwarranted in law or without justification in fact ); *Norinsberg Corp. v. United States Dep't of Agric.*, 47 F.3d 1224, 1228 (D.C. Cir. 1995) (analyzing appellant's argument that the Secretary failed to consider all relevant circumstances for an abuse of discretion and recognizing that the Secretary's choice of sanction cannot be overturned unless it is unwarranted in law or unjustified in fact).

According to MacClaren, the remedial purpose of PACA is to "assure that only financially responsible brokers are in business so that growers are paid for the produce they supply." MacClaren admits in its reply brief, however, that "deterring irresponsible and unscrupulous conduct" is also part of PACA's "remedial purpose." MacClaren points out that its actions of investigating the wrongdoing and making restitution indicate financial responsibility. MacClaren argues that the Secretary's decision to impose the sanction of revocation, as opposed to a civil monetary penalty, did not properly consider the benefits of a civil monetary penalty, including promoting the remedial purposes of PACA and encouraging dealers suspected of violations to cooperate with investigators and make restitution. Moreover, MacClaren contends that the Secretary ignored relevant circumstances such as "who will be most affected by the sanction, the deception of the salesmen's acts and the lack of any prior violations by the company."

Before determining the appropriate sanction against MacClaren, the Secretary fully set forth the sanction policy as described in *S.S. Farms Linn County, Inc.* While the Secretary did not explicitly describe the remedial purposes of PACA, the Secretary noted that "[t]he purpose of a sanction in a PACA administrative disciplinary proceeding is to deter the violator and other potential violators from future violations of the PACA." Considering this purpose, the Secretary concluded that a civil monetary penalty would not sufficiently deter MacClaren and other potential violators from future violations of PACA and that license revocation was necessary to deter such violations.

The sanction policy states that it is "the nature of the violations" that is to be examined "in relation to the remedial purposes" of PACA, not the actions taken after the violations, which could be, and were, considered as relevant circumstances. The nature of the violations at issue, altering inspection certificates and falsifying accounts resulting in losses to shippers in excess of $136,000, indicates that MacClaren was not a financially responsible dealer. The Secretary set forth the specific violations of PACA and noted that the number of violations and the seriousness of the violations were factors in determining that revocation of MacClaren's license was warranted. Therefore, the Secretary properly considered the nature of the violations in relation to the remedial purposes of the PACA. *Cf. ABL Produce, Inc. v. United States Dep't of Agric.*, 25 F.3d 641, 646 (8th Cir. 1994) (noting that "consideration of the 'relevant circumstances' should include consideration of the statute's purpose" and finding that license revocation was not appropriate after examining all relevant circumstances).

MacClaren also claims that the Secretary failed to consider all relevant circumstances before deciding to revoke its license. MacClaren complains that the sanction of license revocation falls exclusively on Gregory MacClaren and Darrell Moccia, while Olds and Gottlob are not subject to any

penalty. The sanction, however, falls entirely on MacClaren as a company. Furthermore, because Olds, Gottlob and Johnston were acting within the scope of their employment when they knowingly and willfully violated PACA, their knowing and willful violations are deemed to be knowing and willful violations by MacClaren. Under PACA, "the act, omission, or failure of any agent, officer, or other person acting for or employed by any commission merchant, dealer, or broker, within the scope of his employment or office, shall in every case be deemed the act, omission, or failure of such commission merchant, dealer, or broker as that of such agent, officer, or other person." 7 U.S.C. § 499p. According to the Sixth Circuit, acts are "willful" when "knowingly taken by one subject to the statutory provisions in disregard of the action's legality." *Hodgins v. United States Dep't of Agric.*, No. 97-3899, 2000 WL 1785733 (6th Cir. Nov. 20, 2000) (quotation omitted). "Actions taken in reckless disregard of statutory provisions may also be considered 'willful.'" *Id.* (quotation and citations omitted). The MacClaren employees admitted to altering USDA inspection certificates and issuing false accounts of sale in knowing disregard of their actions' legality. Accordingly, their willful violations are deemed willful violations by MacClaren.

MacClaren asserts that all of the aggravating factors listed by the Secretary were caused by the salesmen with the exception of MacClaren's negligent supervision and its retention of the salespersons who engaged in the unlawful conduct, and, according to MacClaren, consideration of these two factors is inappropriate. MacClaren fails to cite any authority supporting its argument that these factors are not relevant or otherwise should not be considered. According to MacClaren, the Secretary improperly established a new duty under PACA that supervisors review some undesignated portion of a salesperson's files and that failure to do so constitutes negligent supervision. The Secretary, however, properly considered the management and supervision of employees in a highly regulated industry as a relevant factor

to be weighed in a sanction determination. *See generally, Norinsberg*, 47 F.3d at 1227 (considering relevant circumstances such as the company's financial difficulties, accords reached with suppliers, and the potential harm to the company's creditors from suspending its license). Similarly, while retention of employees who commit violations of PACA is not directly prohibited by PACA, the retention of such employees may be considered relevant in determining whether license suspension or revocation is required to deter future violations. Moreover, as noted above, MacClaren is deemed to have committed the knowing and willful violations committed by its employees, and, therefore, the Secretary properly considered the aggravating factors inherent in the employees' violations. Accordingly, the Secretary considered all relevant circumstances as required in *S.S. Farms Linn County, Inc.* in deciding to impose the sanction of license revocation.

MacClaren next claims that the Secretary erred in imposing a sanction of license revocation as a result of MacClaren's violations of PACA. As we previously noted, the Secretary's decision regarding an appropriate sanction may only be overturned if it is found to be unwarranted in law or without justification in fact. *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 185-86 (1973); *Harry Klein Produce Corp. v. United States Dep't of Agric.*, 831 F.2d 403, 406 (2d Cir. 1987). An appellate court may not reweigh the evidence or substitute its judgment for that of the Secretary. *Havana Potatoes*, 136 F.3d at 91. "The fashioning of an appropriate and reasonable remedy is for the Secretary, not the court." *Glover Livestock Comm'n Co.*, 411 U.S. at 188-89. "The court may decide only whether under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in (his) choice of the remedy.'" *Id.* at 189 (quoting *Jacob Siegel Co. v. Federal Trade Comm'n*, 327 U.S. 608, 612 (1946)).

MacClaren argues that the sanction imposed is without justification in fact. Specifically, MacClaren claims that there

is no evidence to support the Secretary's determination that license revocation is necessary to deter future violations. MacClaren asserts that it has acted to rectify the wrongdoing and prevent future violations and argues that these remedial actions should be taken into consideration. In addition, MacClaren contends that the Secretary's finding that Gregory MacClaren and Darrell Moccia would have known about the altered inspections and false accountings if they had properly supervised their salesmen is without justification in fact.

License revocation under PACA is authorized where the violation is "flagrant or repeated." 7 U.S.C. § 499h(a); *Norinsberg Corp.*, 47 F.3d at 1225. In determining whether violations are "flagrant" under PACA, the court considers "the number of violations, the amount of money involved, and the time period during which the violations occurred." *Allred's Produce*, 178 F.3d at 748. "Repeated" violations under PACA are violations that are not committed simultaneously. *Id.* The Secretary found that MacClaren's violations of PACA were both flagrant and repeated. The Secretary's findings are supported by the record. Three of MacClaren's four salesmen admitted to altering fifty-three inspection certificates over a twenty-nine month period resulting in underpayments totaling $130,903 to twenty-two suppliers. These violations meet the definitions of flagrant and repeated. Therefore, the revocation of MacClaren's license was well within the Secretary's authority and discretion. *See Allred's Produce*, 178 F.3d at 747 (agreeing with the Secretary that Allred's violations of PACA were flagrant and repeated and therefore holding that the Secretary did not abuse his discretion in revoking a dealer's license).

Moreover, the Secretary's legal conclusions that license revocation was necessary to deter future violations and that Gregory MacClaren and Darrell Moccia were negligent in failing to review transaction files prepared by their salesmen

are sufficiently supported by facts set forth by the Secretary.[4] With regard to deterrence, the Secretary found as follows:

> [I]n light of the number of [MacClaren's] willful violations, the seriousness of [MacClaren's] willful violations, the 29-month period during which the violations occurred, the number of [MacClaren's] employees who altered United States Department of Agriculture inspection certificates and made false accounts of sales, the amount of money which [MacClaren] underpaid its produce suppliers and/or brokers, [MacClaren's] retention of the salespersons who engaged in the unlawful conduct, and [MacClaren's] principal's failure to review transaction files prepared by [its] salespersons, I conclude a civil penalty would not be sufficient to deter [MacClaren] and other potential violators from future violations of the PACA.

In determining whether Gregory MacClaren and Darrell Moccia were negligent in failing to review their salesmen's transaction files, the Secretary considered the requirements of

---

[4] MacClaren argues that there is little in this case to suggest that license revocation, rather than a civil monetary penalty, is necessary to deter it or others from future violations of PACA. MacClaren points out that a civil monetary penalty would seem especially appropriate in this case where the imposition of such a penalty, as opposed to revocation, would encourage other dealers to cooperate with investigators and attempt to make restitution. We recognize the merit in MacClaren's argument. We do note, however, that a while imposing a civil monetary penalty as opposed to license revocation may encourage cooperation, it would not be as effective a deterrent because violators might believe that they could commit violations and, if caught, simply cooperate and pay restitution and monetary penalties. In the instant case, we are limited to determining only whether the Secretary made an allowable judgment in the choice of remedy. *Glover Livestock Comm'n Co.*, 411 U.S. at 189. Both revocation and a civil penalty were proper possible remedies in this case. We are not at liberty to reexamine the aggravating and mitigating evidence to determine whether we would have arrived at some lesser sanction, such as a civil penalty. *See Havana Potatoes*, 136 F.3d at 91.

PACA, testimony from an experienced manager in the produce sales industry, and testimony from the USDA sanction witness. Based on the prohibitions set forth in PACA and the testimony that appropriate supervision by a manager includes reviewing a salesperson's transaction files, at least on a random sampling basis, the Secretary concluded that "failure to review a least a portion of the transaction files prepared by . . . salespersons constitutes gross negligence." Because these legal conclusions are sufficiently supported by evidence in the record, the Secretary's decision to revoke MacClaren's PACA license was justified in fact and was not an abuse of discretion.

### III.

For all the reasons set forth above, we affirm the decision of the Secretary.