# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 2, 2011

No. 10-60109

Lyle W. Cayce
Clerk

ZOOCATS, INC., a Texas corporation; MARCUS COOK, also known as Marcus Cline Hines Cook, an individual; MELISSA COODY, also known as Misty Coody, an individual jointly doing business as Zoo Dynamics and Zoocats Zoological Systems,

Petitioners

v.

UNITED STATES DEPARTMENT OF AGRICULTURE,

Respondent

Petition for Review of an Order of the
United States Department of Agriculture
Animal Welfare Act Docket No. 03-0035

Before KING, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

This petition follows a final order of the Secretary of the United States Department of Agriculture (USDA) ordering ZooCats, Inc., Marcus Cook, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60109

Melissa Coody (collectively ZooCats) to cease and desist from violating the Animal Welfare Act (AWA), and revoking ZooCats's animal exhibitor license. ZooCats argues on appeal that the Secretary erred in extending certain filing deadlines, erred in determining certain audio tapes were inadmissible evidence, and erred in determining that ZooCats does not qualify as a "research facility" under the AWA. We find that the Secretary's order was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and that it was supported by substantial evidence.

I.

ZooCats is in the business of exhibiting wild animals such as lions and tigers to the public for promotional events, conventions, and photography sessions. In 2003, the Animal and Plant Health Inspection Service (APHIS), an agency of the USDA, issued a complaint against ZooCats alleging that ZooCats wilfully violated the AWA and its regulations, which set forth the standards for the exhibition, housing, and treatment of animals. *See* 7 U.S.C. §§ 2131-2159; 9 C.F.R. §§ 1.1-3.142. The evidence supporting the complaint included affidavits and reports by APHIS inspectors showing that ZooCats had repeatedly failed to provide its animals with proper facilities, adequate food, and veterinary care, and had exhibited its animals in ways that risked harm to both the animals and the public. In 2007, the Administrative Law Judge (ALJ) instructed APHIS to file an amended complaint by April 13, 2007. On April 13, 2007, APHIS requested that the ALJ extend the filing deadline due to "the abundance of materials" APHIS was reviewing and the "significant number of additional violations" it was alleging.

On May 8, 2007, APHIS filed an amended complaint alleging additional AWA violations by ZooCats similar to those in the original complaint occurring between July 2002 and February 2007, and also alleging that ZooCats does not qualify as a "research facility" under the AWA because ZooCats never performed

2

No. 10-60109

research and never established the administrative procedures required by the AWA for research facilities. Also on May 8, 2007, the ALJ instructed APHIS to file its supplemental witness and exhibits list by November 9, 2007. APHIS filed its supplemental exhibits list on December 11, 2007. APHIS filed its supplemental witness list on December 19, 2007. Upon APHIS's request, the ALJ permitted both late filings. ZooCats did not object to any of APHIS's late filings or to the ALJ's extensions of the deadlines.

On September 24, 2008, the ALJ issued a decision and order finding that ZooCats (i) did not qualify as a "research facility," (ii) wilfully violated the AWA's animal handling regulations on numerous occasions, (iii) wilfully violated the AWA's animal sanitation, employee, housing, drainage, and feeding standards, and (iv) wilfully violated the veterinary care regulations. Based on these findings, the ALJ ordered ZooCats to cease and desist from violating the AWA and its regulations, and permanently revoked ZooCats's exhibitor license.

ZooCats timely appealed the ALJ's decision and order to the USDA Judicial Officer (JO). On July 27, 2009, the JO issued a decision and order adopting the ALJ's decision and order with minor changes related to the admissibility of audio tape recordings into evidence. The JO stated that ZooCats "repeatedly endangered the lives of the viewing public, as well as the lives of [its] animals. . . . To allow [ZooCats] to have an Animal Welfare Act exhibitor license . . . would subject both the animals [it] would exhibit and the public, to an unacceptable level of risk of harm." On December 14, 2009, the JO denied ZooCats's petition to reconsider, and on January 8, 2010, the JO stayed its final order pending review by this court. ZooCats timely petitioned for review.

II.

We have jurisdiction to review the final order of the Secretary, as issued by the JO, pursuant to 7 U.S.C. § 2149(c). "Judicial review of the decision of an administrative agency is narrow." *Allred's Produce v. U.S. Dep't of Agric.*, 178

3

F.3d, 743, 746 (5th Cir. 1999). We will uphold the Secretary's order unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). We do not substitute our own judgment for that of the Secretary, and will only set aside the order if it is "unwarranted in law or without justification in fact." *Allred's Produce*, 178 F.3d at 746 (citations omitted). This deferential standard requires that we affirm if there is substantial evidence in the record considered as a whole to support the decision. *Cedar Lake Nursing Home v. U.S. Dep't of Health & Human Servs.*, 619 F.3d 453, 456 n.3 (5th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 362 (5th Cir. 2005) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938) (citations omitted)).

ZooCats argues: (i) that the ALJ erred when it extended the filing deadlines for the amended complaint and the witness and exhibits list; (ii) that the ALJ and JO improperly excluded from evidence an audio tape of a conversation between Marcus Cook and an APHIS investigator; and (iii) that the ALJ and JO incorrectly found that ZooCats does not qualify as a "research facility." In essence, ZooCats contends that each of these alleged errors makes the Secretary's order "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." § 706(2)(A). We find each of these arguments unpersuasive.

First, ZooCats argues that ALJ erred when it extended the filing deadlines for the amended complaint and the witness and exhibits list. It contends that the additional evidence supporting the amended complaint should not have been admitted or considered by the Secretary in issuing its order. We disagree. An ALJ has broad discretion to manage its docket to promote judicial economy, efficiency, and to protect the interests of the parties. *See Fla. Mun. Power*

No. 10-60109

*Agency v. Fla. Energy Regulatory Comm'n*, 315 F.3d 362, 366 (D.C. Cir. 2003). Additionally, extensions of filing deadlines are authorized if, in the ALJ's judgment, there is "good reason for the extension." 7 C.F.R. § 1.147(f). In this case, the decisions to grant extensions were within the ALJ's discretion, and APHIS provided good reasons (i.e., the amount of evidence being compiled and the number of allegations being prepared) to justify the deadline extensions.

Moreover, ZooCats failed to object to the extensions and was not prejudiced by the extensions because there was sufficient evidence supporting the original complaint showing ZooCats had wilfully violated the AWA. *See* 7 U.S.C. § 2149; *see also Cox v. U.S. Dep't of Agric.*, 925 F.2d 1102, 1105 (8th Cir. 1991) (noting only one willful violation is needed to revoke a license). We find the ALJ committed no error in granting the extensions, permitting the amended complaint, and admitting the additional evidence.

Second, ZooCats argues that the audio tape recordings were admissible evidence and asks that we remand this case to the JO for consideration of the audio tape evidence. ZooCats states that the recordings contain a conversation between Marcus Cook and an APHIS inspector where they discuss ZooCats's alleged non-compliance with the AWA and are therefore relevant evidence. ZooCats is correct that the audio tapes were excluded from evidence by the ALJ on an improper basis. And on appeal, the JO correctly found that the tapes were generally admissible evidence. Nonetheless, the JO upheld the ALJ's decision because ZooCats failed to lay a proper foundation to admit the tapes, and that in any case the failure to admit the tapes was harmless error.

We agree with the JO that the tapes lacked foundation and ZooCats does not challenge the JO's finding. Moreover, even if the tapes were admissible, failure to admit the tapes would be harmless error because we find that there is still substantial evidence in the record supporting the agency's determination that ZooCats wilfully violated the AWA. *See Conoco, Inc., v. Dir., Office of*

No. 10-60109

*Worker's Comp. Programs*, 194 F.3d 684, 690-91 (5th Cir. 1999) (holding even where an ALJ committed "significant legal error," such error was harmless because substantial evidence supported the agency's order). The administrative record shows that on numerous occasions ZooCats exhibited lions and tigers for photography shoots with children without placing any barrier between the animals and the public, creating a danger to the public and a risk of behavioral stress and harm to the animals. Additionally, several members of the public have been injured by the animals due to improper exhibition barriers. There is evidence that ZooCats's trainers did not handle the animals properly, at times using physical abuse with a cattle prod to train, work, or control an animal during an exhibition. Evidence also shows that ZooCats failed to provide its animals with a proper diet, failed to properly treat the animals or illnesses and injuries, and failed to maintain proper facilities in which to house the animals. Even if failure to admit the tapes was legal error, it would not be so significant as to overcome the overwhelming amount of evidence in support of the order.

Finally, ZooCats contends that the agency erred in concluding that it did not qualify as a "research facility" as that term is defined by the AWA. Under the AWA, a "research facility" is "any school, institution, organization, or person that uses or intends to use live animals in research, tests, or experiments." 7 U.S.C. § 2132(e). The ALJ and the JO found that ZooCats did not use or intend to use its animals in research, tests, or experiments, in part because ZooCats has not complied with many of the regulations governing research facilities. ZooCats was first registered as a research facility in March 2001, but the record indicates that ZooCats has not conducted any research, tests, or experiments with its animals since that time. The absence of any research, testing, or experimentation in the almost ten years since ZooCats registered as a research facility and its lack of adherence to the regulations refute its assertion that it

6

No. 10-60109

intends to conduct research with the animals.  Therefore, we find that the Secretary did not err in concluding that ZooCats is not an AWA research facility.

III.

We reject each of ZooCats's arguments that the ALJ or JO committed legal errors, and find that the administrative record contained substantial evidence that ZooCats repeatedly and wilfully violated the AWA, and that ZooCats is not an AWA research facility.  We therefore hold that the Secretary's order compelling ZooCats to cease and desist from violating the AWA and permanently revoking ZooCats's exhibitor license was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  2 U.S.C. § 706(2)(A). PETITION DENIED.

7